MASINO, Sheila and Masino, Gerald, Appellants,

v.

OUTBOARD MARINE CORPORATION and OMC–Lincoln.

No. 80–2711.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) June 12, 1981.

Decided June 23, 1981.

Joseph D. Shein, Cary L. Sandler, Shein & Brookman, P. A., Philadelphia, Pa., for appellants.

George J. Lavin, Jr., Liebert, Short, Fitzpatrick & Lavin, Philadelphia, Pa., for appellees.

Before ALDISERT, WEIS and SLOVITER, Circuit Judges.

### OPINION OF THE COURT

ALDISERT, Circuit Judge.

The question presented by this appeal from a unanimous jury verdict for the defendant in a diversity of citizenship case is whether the district court sitting in the Eastern District of Pennsylvania erred in refusing to apply a Pennsylvania statute providing that a civil jury vote of five-sixths suffices for entry of judgment. The district court reasoned, *inter alia*, that the long-standing federal policy favoring unanimous civil jury verdicts compelled application of the unanimity rule in this case. *Masino v. Outboard Marine Corp.*, 88 F.R.D.

251 (E.D.Pa.1980). We agree and accordingly affirm.

Gerald and Sheila Masino, appellants, initiated this diversity action alleging that appellee had manufactured and sold a defective lawnmower that had injured Mrs. Masino. The case was tried to a jury of eight persons pursuant to the local rules of the Eastern District of Pennsylvania,[1] and counsel for appellants requested a charge based on Pa.Cons.Stat.Ann. tit. 42, § 5104(b) (Purdon Supp. 1980): "In any civil case a verdict rendered by at least five-sixths of the jury shall be the verdict of the jury and shall have the same effect as a unanimous verdict of the jury." The trial judge refused the instruction, and the jury returned a unanimous verdict for appellee.

Although federal courts sitting in diversity actions must usually apply the substantive law of the forum state, the same principle does not apply with equal force to procedural rules. The line of demarcation between "substantive" rules and "procedural" rules, however, is often blurred, and the Supreme Court has cautioned that the line "shifts as the legal context changes." *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965). One test for determining whether a federal or state rule should be applied is the "outcome determinative" test, but the Supreme Court has warned against its mechanical application. *Byrd v. Blue Ridge Electric Cooperative, Inc.*, 356 U.S. 525, 537–38, 78 S.Ct. 893, 900–01, 2 L.Ed.2d 953 (1958); *see also Hanna*, 380 U.S. at 467, 85 S.Ct. at 1141. Recognizing the complexity of the inquiry, this court has eschewed reliance on "litmus paper" tests, and has instead examined the choice of law question in light of the policies underlying the doctrine developed from *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See, e. g., Edelson v. Soricelli*, 610 F.2d 131, 141 (3d Cir. 1979); *Witherow v. Firestone Tire & Rubber Co.*, 530 F.2d 160, 163 (3d Cir. 1976).

In *Edelson v. Soricelli* and *Stoner v. Presbyterian University Hospital*, 609 F.2d 109 (3d Cir. 1979), we held that Pennsylvania's requirement that medical malpractice claims be arbitrated before judicial resolution binds federal courts in diversity actions. We characterized the arbitration requirement as "a condition precedent to entry into the state judicial system," *Edelson*, 610 F.2d at 134, and we recognized the advantage that would have resulted to federal plaintiffs if federal courts did not enforce the precondition, *id.* at 141. We noted that the arbitration requirement did not affect the trial of the federal action once the case ripened for trial, but merely regulated the time at which trial could occur. *See generally Edelson*, 610 F.2d at 134–35, 141.

In contrast, the five-sixths majority verdict statute does affect the way the trial is conducted, and in this fundamental respect this case differs from *Edelson* and *Stoner*. We therefore believe the proper analysis of this question may be derived from *Byrd v. Blue Ridge Electric Cooperative, Inc.* In *Byrd*, the Court held that the determination of employee status for purposes of South Carolina's Workmen's Compensation Act must be submitted to the jury in a federal diversity action even though South Carolina courts would leave that issue to the trial judge. *Edelson* isolated three premises underlying the *Byrd* decision: the lack of a strong and explicit state policy justifying the removal of this discrete factual determination from the jury; the federal interest in insuring access by litigants in federal courts to a jury; and the continuing viability of the outcome determinative analysis of *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). *See Edelson*, 610 F.2d at 138–40. Although *Edelson* concluded that these three premises would be served better by applying the state requirement of arbitration of medical malpractice claims as a precondition to suit in federal court, we conclude that the federal

---

1. E.D.Pa.R. 29½, *now found* in E.D.Pa.R. 34(b)(1). Application of the five-sixths rule would therefore require agreement of seven jurors. Appellants do not challenge the number of jurors used.

requirement of jury unanimity is the appropriate rule in the present case.[2]

The single apparent state interest in application of a five-sixths majority rule is greater efficiency of judicial administration by reducing the number of deadlocked juries. Pennsylvania has no concern, however, with the administration of the federal judicial system. Indeed, we noted in *Edelson* that *Byrd* "implicates no more than trial management in federal courts...." 610 F.2d at 141. Because trial management in the federal courts is a weighty concern of the federal judiciary and of no concern to the state judiciary, the absence of a state interest in application of the five-sixths majority rule fulfills the first premise of *Byrd.*

The federal interest in unanimity, although not rising to constitutional dimensions, is cloaked in a strong tradition, *see Johnson v. Louisiana*, 406 U.S. 356, 370, 92 S.Ct. 1620, 1637, 32 L.Ed.2d 152 (1972) (Powell, J., concurring) ("unanimity ... is mandated by history"), and this interest meets the second premise of *Byrd.* Assuming, and this would be a most generous assumption, that the tradition favoring unanimous verdicts could be reversed by a contrary local rule, just as the tradition favoring twelve jurors may be altered, *see Colgrove v. Battin*, 413 U.S. 149, 160, 163, 93 S.Ct. 2448, 2454, 2456, 37 L.Ed.2d 522 (1973), no local rule to that effect exists in the Eastern District of Pennsylvania. The federal interest need not be of constitutional magnitude to outweigh an insubstantial state interest, however, if all other aspects of *Byrd* are met. *See Byrd*, 356 U.S. at 357 & n.10, 78 S.Ct. at 900 & n.10; *Edelson*, 610 F.2d at 139.

Finally, we are not convinced that application of the federal unanimity rule instead of the state five-sixths majority rule will alter a substantial number of outcomes and thereby frustrate the policy of discouraging forum shopping underlying *Erie* and its progeny. *See Witherow*, 530 F.2d at 164.

The concern with forum shopping in this case is minimal because the appellants brought suit in federal court even though they had notice that the federal verdict requirement would very likely differ from the one they advocated. This action therefore demonstrates that the rule chosen is not so determinative as to dictate choice of forum. The concern with preventing discrimination against residents, another policy underlying *Erie*, is also minimal; it is improbable that a party who has lost a verdict unanimously would have prevailed had he been required to persuade only seven, rather than eight, jurors to vote the other way. The predominant effect of a majority verdict rule in comparison to a unanimous verdict rule is to reduce the likelihood of deadlocked juries. *See Wieser v. Chrysler Motors Corp.*, 69 F.R.D. 97, 100–01 (E.D.N.Y.1975) (examining New York's experience with majority verdicts). As a result, the concern with state-federal relationships in this case is minimal because the state simply has no interest in managing trials conducted in federal courts. Thus, the final premise of *Byrd* is not offended by our decision.

The trial judge employed alternative holdings, concluding that the use of the unanimity rule was not error, and in the alternative, if it was error, it was harmless, *see* Fed.R.Civ.P. 61, but we need not reach this question. We rest our conclusion solely on the ground that use of the unanimity rule was not error.

Accordingly, the order of the district court entering judgment for appellee will be affirmed.

---

2. The federal unanimity requirement is implicit in Fed.R.Civ.P. 48: "The parties may stipulate that the jury shall consist of any number less than twelve or that a verdict or a finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury."