Betty BLEDSOE and Gail Wesson,
Plaintiffs-Appellants,

v.

Daniel V. GARCIA, Bill Sieferd, and
Bill Peppler, Defendants-Appellees.

Nos. 81–1778, 81–2336.

United States Court of Appeals,
Tenth Circuit.

Sept. 4, 1984.

**1238**

David H. Pearlman of Pearlman & Diamond, P.A., Albuquerque, N.M., for plaintiffs-appellants.

Charles A. Pharris, Kim E. Kaufman, and Spencer Reid of Keleher & McLeod, P.A. Albuquerque, N.M., for defendants-appellees.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

This three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of these appeals. *See* Fed.R.App.P. 34(a); Tenth Circuit R. 10(e). The causes are therefore ordered submitted without oral argument.

In No. 81–1778 plaintiffs Betty Bledsoe and Gail Wesson appeal from an adverse judgment in their civil rights action brought pursuant to 42 U.S.C. § 1983. Their main contentions are that the trial court committed reversible error in giving the jury instructions and in refusing plaintiffs' tendered instructions. In No. 81–2336 plaintiffs also challenge the district court's order requiring them to obtain additional parts of the trial transcript for the appeal. We affirm in both cases.

I

The facts, when viewed favorably to the defendants, are briefly as follows:

Defendant Daniel Garcia went to the Bledsoe residence on April 4, 1978, to arrest Larry Bledsoe pursuant to a bench warrant for failure to appear, and to check on his A.W.O.L. status. When defendant Garcia went to the door he requested to speak with Larry Bledsoe. Larry came to the door and he and Garcia spoke outside. Garcia identified himself to Larry as a police officer, and told him he had a bench warrant for his arrest. He also asked Larry if he was A.W.O.L., and Larry answered that he was. Supp. I R. 23, 40–41, 195; Supp. II R. 414, 426–27.

As a result, defendant Garcia informed Larry that he would have to go with Garcia to the Sheriff's Department. Larry asked Garcia if he could reenter the Bledsoe residence to inform his mother that he would be going to jail. Larry entered the residence and said that Garcia was a police officer, that he was going to take Larry to jail, and that Larry had to go with him. Supp. I R. 42; Supp. II R. 448.

While there was a dispute as to which person made the statement, it was established that someone in the house told Larry that he was "not going anywhere with that son-of-a-bitch," and other persons in the room started yelling and telling Larry that he was not going to go anywhere. Garcia left the residence and briefed two other officers, defendants Bill Sieferd and Bill Peppler, about the situation. When the officers walked toward the house, plaintiff Bledsoe appeared at the door and told them that they were not coming in. Garcia then arrested her for interfering with a police officer. Supp. II R. 339, 453, 455–56, 569–70.

Upon entering the house the officers were confronted with much loud talk and profanity. Defendants Garcia and Peppler undertook to search the house, but plaintiff Gail Wesson stood in the hallway and tried to block their way into the kitchen and the bedrooms. At that point Garcia placed her under arrest for interfering with the duties of a police officer. Larry Bledsoe by this time had escaped. Supp. I R. 25–26; Supp. II R. 457, 504–05.

Plaintiffs Bledsoe and Wesson brought suit pursuant to § 1983, claiming that their civil rights had been violated. Specifically,

plaintiff Bledsoe claimed that defendant Garcia had used excessive force while arresting her, and plaintiff Wesson claimed that defendants Garcia and Sieferd had falsely arrested and imprisoned her. I R. 1–5, 119. The jury returned a verdict in favor of the defendants. *Id.* at 158–59.

On appeal, plaintiffs contend in No. 81–1778 that the trial court erred (1) in instructing the jury that good faith is a defense to a § 1983 claim of the use of excessive force; (2) in instructing the jury that a police officer may enter a residence to search for an occupant who has informed the officer that he is A.W.O.L. and who subsequently has reentered the residence; (3) in instructing the jury that an officer need not state the grounds for the arrest or read the charges to the person arrested; (4) in refusing to instruct the jury that an unlawful arrest does not provide probable cause for the arrest; and (5) in instructing the jury that a unanimous verdict was required. In No. 81–2336 plaintiffs challenge the district court's order requiring them to obtain additional portions of the trial transcript for the appeal.

## II

Plaintiff Bledsoe argues that the trial court erred in refusing requested Instruction No. 35 that good faith and probable cause are not a defense to a claim of excessive force under § 1983 and instead instructing the jury to the contrary. She argues that good faith is a defense in § 1983 actions only to the extent that it would be a defense under the prevailing view of tort law in the United States, citing *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and that such a defense cannot be recognized here because it has never been a defense to a claim of excessive force in the common law of torts.

In *Landrum v. Moats,* 576 F.2d 1320, 1327 (8th Cir.), *cert. denied,* 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1978), the Eighth Circuit rejected a similar argument that the defense of good faith is inapplicable to a § 1983 action based on excessive force and assault and battery, stating that:

"[w]hen a court evaluates police conduct relating to an arrest its guideline is 'good faith and probable cause.'" *Scheuer v. Rhodes, supra,* 416 U.S. [232] at 245, 94 S.Ct. [1683] at 1691 [40 L.Ed.2d 90 (1974)], *quoting Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213 [1219], 18 L.Ed.2d 288 (1967). A similar guideline must be applied in assessing the propriety of force used by the police to effectuate an arrest. If police officers (1) believe that a certain amount of force is necessary to make an arrest, (2) believe that use of that amount of force is lawful under the circumstances, and (3) have reasonable grounds for each of the foregoing beliefs, then they are entitled to the defense of good faith even if the use of force turns out, *ex post,* to have been illegal or excessive.

The Eighth Circuit reaffirmed this position in *Bauer v. Norris,* 713 F.2d 408, 411 & n. 6 (8th Cir.1983). *See also Peraza v. Delameter,* 722 F.2d 1455, 1457 (9th Cir.1984) (in § 1983 action involving claim of excessive force by police officer, good faith defense instruction approved as being adequate to apprise jury of applicable law); *Wellington v. Daniels,* 717 F.2d 932, 937 n. 7 (4th Cir.1983) (jury properly instructed on what constituted unreasonable force for purposes of pendent state claim and good faith defense under § 1983).

■ In determining the availability of an immunity to a § 1983 damages action, we are required to make a "considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it..., considered together with the policy and history of § 1983. *Imbler v. Pachtman,* 424 U.S. 409, 421, 424, 96 S.Ct. 984, 990, 992, 47 L.Ed.2d 128 (1976); *see also Briscoe v. Lahue,* 460 U.S. 325, 329–46, 103 S.Ct. 1108, 1112–21, 75 L.Ed.2d 96 (1983); *Wood v. Strickland,* 420 U.S. 308, 318–22, 95 S.Ct. 992, 999–1001, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 238–49, 94 S.Ct. 1683, 1687–93, 40 L.Ed.2d 90 (1974); *Pierson v. Ray,* 386 U.S. 547, 555–57, 87 S.Ct. 1213, 1218–19, 18

L.Ed.2d 288 (1967); *McGhee v. Draper*, 564 F.2d 902, 914 (10th Cir.1977).

The general common law principle applicable to police officers making arrests is found in Restatement (Second) of Torts § 118 (1965):

The use of force against another for the purpose of effecting his arrest and the arrest thereby effected are privileged if all the conditions stated in §§ 119–132, in so far as they are applicable, exist.

The principal condition relevant for our purposes is stated in § 132 as follows:

The use of force against another for the purpose of effecting the arrest or recap-. ture of the other, or of maintaining the actor's custody of him, is not privileged if the means employed are in excess of those which the actor reasonably believes to be necessary.

These principles of the Restatement have been explicitly recognized by various courts. *See, e.g., Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 456 F.2d 1339, 1347 (2d Cir. 1972) (on remand); *Lassiter v. District of Columbia*, 447 A.2d 456, 459 (D.C.1982); *Wirsing v. Krzeminski*, 61 Wis.2d 513, 213 N.W.2d 37, 40 (1973).

Contrary to plaintiffs' assertion, § 132 of the Restatement supports the recognition of a good faith defense to a claim of excessive force under § 1983, permitting as it does a privilege for the use of force if not in excess of that which the actor "reasonably believes to be necessary." Restatement (Second) of Torts § 132. The interests served by such a rule are apparent. Police officers are often required to assess a potentially dangerous situation and to respond to it without studied reflection. They should not be held civilly liable if they act in a reasonable belief that the amount of force used is necessary under the circumstances.

■ We are satisfied that the privilege of arrest as available at common law provides a sufficient parallel for recognizing in a § 1983 suit a good faith defense to a claim of excessive force in making an arrest. This conclusion is in harmony with

the defense generally recognized in arrest situations since *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967), and is consistent with the policies of § 1983. *See generally Developments in the Law—Section 1983 and Federalism*, 90 Harv.L.Rev. 1133, 1211 & n. 126 (1977).

Here the trial court instructed the jury that "[a] police officer who has violated the Constitutional rights of a claimant will nonetheless have a defense if he believed in good faith that his actions were lawful, and if that belief was a reasonable one for him to hold," II R. 8–9, and properly placed the burden of proof of the defense on the defendants. *Id.* at 9. We conclude that the instruction given is a correct statement of the law, and that the court did not err in refusing plaintiff Bledsoe's requested instruction.

III

■ Plaintiffs argue that Instruction No. 17 is an inaccurate statement of the law because it failed to apprise the jury of the "exigent circumstances" doctrine. They assert that under *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), police officers do not have authority to enter and search the home of a party not named in an arrest or search warrant in the absence of exigent circumstances. They say that "[i]f, in fact, there was evidence in the case from which the jury could have found the presence of 'exigent circumstances', the jury would have to first be instructed as to the elements of the 'exigent circumstances' doctrine. Yet the trial court gave no such Instruction to the jury, although the trial court had an inescapable duty to fully and correctly instruct the jury." Appellants' Brief-in-Chief 13.

Instruction No. 17 reads:

You are instructed to accept as true the fact that Larry Bledsoe informed Detective Garcia, outside of the Bledsoe residence on April 4, 1978, that he was A.W.O.L. from the U.S. Navy. This es-

tablishes probable cause for the arrest of Larry Bledsoe and Sgt. Garcia and the other officers were then entitled to enter the Bledsoe residence without either a search warrant or arrest warrant and to conduct a search for him in the residence.

I R. 137.

We entertain some doubt whether plaintiffs made a sufficient objection to the instruction below to permit assignment of error on the exigent circumstances point.[1] However, even assuming that a proper objection in this respect was made, we cannot agree that the district court erred in failing to instruct the jury on the exigent circumstances doctrine. In *Steagald* the Court held that absent exigent circumstances or consent, a law enforcement officer may not legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant. 451 U.S. at 205–06, 101 S.Ct. at 1644–45. Here, however, the record shows that, with the exception of three days, Larry Bledsoe was living with his parents at the Bledsoe residence continuously from the time he left the naval base in Long Beach, California— February 6, 1978—to the time of his arrest—April 4, 1978. *See* Supp. I R. 6, 36; Supp. II R. 394. Thus, plaintiffs cannot seriously contend that Officer Garcia was entering the residence of a third party to effect an arrest.

We are satisfied that there was no reversible error in the giving of Instruction No. 17. From the undisputed evidence we feel that there were exigent circumstances justifying the entry of the house where Larry Bledsoe had been staying, within the exception to the warrant requirement recognized for exigent circumstances in *Steagald*, 451 U.S. at 221, 101 S.Ct. at 1652. We put to one side, as the instruction did, the bench warrant which concerned a misdemeanor. And it is true that the punishment scale of imprisonment for an A.W.O.L. offense for a period not to exceed one year, 10 U.S.C.A. § 856 (West 1983) (Table of Maximum Punishments), placed the offense just below the general definition of a felony, classifying it as a misdemeanor. *See* 18 U.S.C. § 1. Nevertheless, giving consideration to the gravity of the A.W.O.L. offense as we must in evaluating the exigency of the circumstances, *see Welsh v. Wisconsin*, —— U.S. ——, ——, 104 S.Ct. 2091, 2099, 80 L.Ed.2d 732 (1984), and the circumstances as a whole, we hold that the exception of exigent circumstances applied here.

The unauthorized absence from the military unit for almost two months is a serious offense. The officers learned from Larry Bledsoe himself that he was guilty of the A.W.O.L. violation. Moreover, when he reentered the house and said he was to be taken to jail, there was a disturbing reaction, with emotional language and statements clearly showing defiance of the officers' efforts to take Bledsoe into custody. We are convinced that the resistance and the possibility of flight justified the immediate actions taken to apprehend Bledsoe, who admitted his offense, on the basis of probable cause and exigent circumstances under *Steagald*. *See United States v. Cuaron*, 700 F.2d 582, 590 (10th Cir.1983).[2]

---

1. In objecting to this instruction at trial, counsel for plaintiffs merely stated that (1) the instruction unduly highlighted one of the matters of fact that the jury was to consider; (2) probable cause for the arrest of Larry Bledsoe was not relevant; (3) the instruction misstated the law of New Mexico for the reason that officers, under State law, do not have a right to enter a residence to effect a warrantless arrest for a misdemeanor without the party's consent; and (4) the instruction expanded the search to anything in the residence. *See* II R. 26–28. There was no reference, however, to the "exigent circumstances" doctrine.

2. The authority of civil law enforcement officers to apprehend members of the armed forces when absent without leave is clear under *Myers v. United States*, 415 F.2d 318, 319 (10th Cir. 1969), where we held that a New Mexico State Police officer had the authority and duty to arrest two young men in military fatigues under 10 U.S.C. §§ 807–09 when they volunteered information they were A.W.O.L. *But see Martin v. Commonwealth*, 592 S.W.2d 134, 138 (Ky. 1979) (civil officers have no authority to arrest members of armed forces who are merely unauthorized absentees).

In sum, we conclude there was no reversible error in the giving of Instruction No. 17.

## IV

■ Plaintiffs argue that the trial court's Instruction No. 16, which states that "[a] law officer in making an arrest is not required to state the grounds for the arrest or to read charges to the person arrested," I R. 136, is an incorrect statement of the law and reversible error. Relying on *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), they say that the general rule requires police, in entering premises with or without a warrant, to give notice to the occupants of their purpose and authority.

This claim concerns only the arrests of plaintiffs Betty Bledsoe and Gail Wesson, not that of Larry Bledsoe. These arrests of the two women were made under state law and did not implicate any federal charges, and no federal constitutional authority is cited which mandates the arrest and search procedure that plaintiffs say was obligatory. The instruction given by the trial court accurately states the law in New Mexico on the need to state the grounds for an arrest. In *State v. Gibby*, 78 N.M. 414, 432 P.2d 258, 261 (1967), the Supreme Court of New Mexico stated:

No authority of any nature is presented in support of Point IV, that the charge was not read to appellant when he was arrested, nor do we know of any provision, constitutional or statutory, wherein reading of a charge to a defendant at the time of arrest is required. The statutes do not make it a duty to advise of the charges on which an arrest is based, prior to his being brought before a magistrate. §§ 41-3-1 and 41-3-7, N.M.S.A. 1953.

*See also State v. McCormick*, 79 N.M. 22, 439 P.2d 239, 239 (1968).

■ Plaintiffs' reliance on *Miller v. United States*, which applied District of Columbia law, makes it evident that they are arguing a point of law different from that contained in Instruction No. 16. *Mil-*

*ler* involved a requirement of local law that before making a forcible entry for a search or arrest, an officer must announce his purpose and authority. This argument about lack of notice of purpose and authority before a forcible entry was not made to the trial court or developed in the trial record; the objection to the instruction was that if requested to do so, the arresting officer is required by state law to state the grounds of the arrest or read the charges. We therefore will not consider this issue which is presented for the first time on appeal. *See Kirkpatrick Oil & Gas Co. v. United States*, 675 F.2d 1122, 1123 n. 1 (10th Cir.1982); *Nulf v. International Paper Co.*, 656 F.2d 553, 559 (10th Cir.1981).

## V

Plaintiff Wesson argues that the trial court erred in refusing to give Requested Instruction No. 27, which states that "resisting an unlawful arrest does not provide probable cause for the arrest." I R. 79. This instruction, she argues, was essential to charge the jury fully and correctly on the law applicable to her claim of false arrest.

Plaintiff Wesson also points out that the trial court's Instruction No. 8 requires that the peace officer be engaged in "the lawful discharge of his duties." I R. 127. She asserts that none of the instructions given by the trial court define for the jury what is meant by that term so that the jury could determine whether or not plaintiff was committing the offense of " 'resisting or abusing ... [a] peace officer in the *lawful* discharge of his duties.' " Appellants' Brief-in-Chief 19–20 (quoting instruction) (emphasis in brief).

■ We must reject both contentions. First, the evidence introduced at trial showed that defendant Garcia arrested plaintiff Wesson because she was interfering with the official duties of a police officer—the taking into custody of Larry Bledsoe—and not because she was resisting arrest. Supp. II R. 457–58. This testimony was not contradicted by plaintiff at tri-

al. Accordingly, we find no error in the trial court's refusal to give the requested instruction. *See Brownlow v. Aman,* 740 F.2d 1476, 1489 (10th Cir.1984) (trial court properly ruled that proferred instructions, although accurate statements of law, did not apply to case because they required facts not in evidence).

Second, plaintiff cannot now complain of the giving of Instruction No. 8, having failed to make any objection at trial. *See* II R. 22–31. In any event, we are satisfied that the instructions that were given,[3] when viewed as a whole, adequately apprised the jury of plaintiff's theory of false arrest and were clear, correct, and adequate. *See Glasscock v. Wilson Constructors, Inc.,* 627 F.2d 1065, 1068 (10th Cir. 1980); *Marshall v. Ford Motor Co.,* 446 F.2d 712, 715 (10th Cir.1971); *Taylor v. Denver & Rio Grande Western Railroad,* 438 F.2d 351, 354 (10th Cir.1971).

## VI

■ Plaintiffs argue that the trial court erred in instructing the jury that a unanimous verdict was required. They say that their tendered instruction, which would require agreement by only five-sixths of the jurors, *see* I R. 109, represents the substantive law of New Mexico, and that there is no longer any procedural bar under Rule 48 of the Federal Rules of Civil Procedure to a less than unanimous jury, citing *Wieser v. Chrysler Motors Corp.,* 69 F.R.D. 97 (E.D. N.Y.1975). The plaintiffs did make a similar oral objection after the charge and before the jury began its deliberations. II R. 30–31.

In *Wieser* the district court held that there is no longer any procedural requirement dictating jury unanimity in federal civil trials, relying on *Colgrove v. Battin,* 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973), for support. In *Colgrove* the Supreme Court held that a local federal district court rule, providing that a jury for the trial of civil cases shall consist of six persons, satisfied the Seventh Amendment guarantee of trial by jury in civil cases. *Id.* at 160, 93 S.Ct. at 2454. The Court also held that the local rule was not inconsistent with Fed.R.Civ.P. 48,[4] rejecting the proposition that Rule 48 implied a direction to impanel a jury of twelve in the absence of a

---

3. The trial court gave the following instructions on plaintiff's theory of false arrest:

> On her claim of false arrest, the Plaintiff Wesson has the burden of proving that at the time of her arrest, the defendant did not have probable cause to arrest her.
>
> It is admitted that Plaintiff Wesson was arrested for the crime of obstructing and resisting a peace officer and assault.
>
> Now, probable cause to arrest for these offenses exists where the facts and circumstances existing in the immediate province of the arresting officer are sufficient within themselves to warrant a prudent man or a prudent person to believe that an offense is being committed in his presence.
>
> Now, related to the issue as to whether the officers believed probable cause existed for believing offenses were being committed in their presence are, among others, the following two instructions:
>
> Instruction number 8, There was in force in the State of New Mexico at the time the occurrence in question occurred a statute which provided that resisting or obstructing an officer consists of knowingly obstructing or resisting or opposing any officer of this state or any other judicial writ or process, or resisting or abusing any justice of the peace or peace

officer in the lawful discharge of his duties. Whoever commits resisting or obstructing an officer is guilty of a petty misdemeanor.

> And Instruction number 9, There was in force in the State of New Mexico at the time of the occurrence in question a certain statute which provided that assault consists either of (a) or (b), any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery, or (c) the use of insulting language towards another impuning [sic] his manner, delicacy or reputation.
>
> You are instructed, Gentlemen of the Jury, that mere argument or remonstrances and criticisms and profanity towards an arresting officer do not constitute the crime of obstructing or resisting an officer unless the language used hindered or impeded the officer or made his job more difficult.

II R. 7–8.

4. Rule 48 provides:

> The parties may stipulate that the jury shall consist of any number less than twelve or that a verdict or a finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury.

Fed.R.Civ.P. 48.

stipulation of the parties for a lesser number. *Id.* at 163, 93 S.Ct. at 2456. The district court in *Wieser* apparently reasoned that since the Supreme Court held that Rule 48 does not require a twelve-person jury, it could be inferred that the rule also does not mandate unanimity in federal civil trials.

This reasoning was rejected in *Masino v. Outboard Marine Corp.*, 88 F.R.D. 251, 255 (E.D.Pa.1980), *aff'd*, 652 F.2d 330 (3d Cir.), *cert. denied*, 454 U.S. 1055, 102 S.Ct. 601, 70 L.Ed.2d 591 (1981), the district court stating:

> We cannot accept *Wieser's* broad reading of the *Colgrove* case. The Supreme Court in *Colgrove* only addressed the narrow issue of whether district courts could provide in their local rules for a six-man jury in civil cases. The Court was not presented with the question of whether there must be unanimous agreement among jurors in order to render a verdict in federal civil trials. The Justices in no way intimated that unanimous jury verdicts, which have been utilized in federal courts for almost 200 years, are not required by the Federal Rules of Civil Procedure. We do not believe that *Colgrove* can be read as an abandonment of the long-held federal rule requiring unanimous verdicts.

The Third Circuit agreed that the "federal requirement of jury unanimity" was the appropriate rule in that diversity case, noting that "[t]he federal unanimity requirement is implicit in Fed.R.Civ.P. 48." 652 F.2d at 331–32 & n. 2.

We need not decide all the issues raised. Plaintiffs have pointed to no local federal court rule or stipulation by the parties that could serve as authority for a less than unanimous jury. The only authority cited is N.M.Unif.Jury Instr.Civ. 20.9, which is of no help to them here, because plaintiffs' claims are based on a violation of *federal* constitutional rights sought to be enforced through the remedy of § 1983, and are not based on a violation of state law. Even in the diversity context, however, we have held that the right to a twelve-person jury is not a matter of substantive law. *See Palmer v. Ford Motor Co.*, 498 F.2d 952, 954 (10th Cir.1974).

Plaintiffs also argue that the requirement of unanimity imposes a higher burden of proof than that of preponderance of the evidence, thus violating their due process rights. The trial court was unable to track the logic of this argument, *see* II R. 31, and we can do no better. While jurors have the duty to consult with one another and to deliberate with a view to reaching an agreement, their verdict must still represent the considered judgment of each juror. Imposing a requirement of a unanimous verdict does not alter the basic burden of proof that each juror is instructed to use in weighing the evidence and arriving at an ultimate decision.

In sum, we find no error in the trial court's instruction that a unanimous jury verdict was required.

## VII

 In addition to their complaints about the jury instructions, in No. 81–2336 the plaintiffs' docketing statement also challenged the trial court's order requiring them to obtain additional portions of the trial transcript pursuant to Fed.R.App.P. 10(b)(3). However, since plaintiffs have failed to argue this issue in their consolidated brief, they are deemed to have waived this contention on appeal, and the order challenged in No. 81–2336 must be affirmed. *See Platis v. United States*, 409 F.2d 1009, 1012 (10th Cir.1969); *In re Williamson*, 431 F.Supp. 1023, 1027 n. 2 (W.D. Okla.1976); Fed.R.App.P. 28.

AFFIRMED.