746 F.2d 1413
 Georgia VARELA, Plaintiff-Appellant,
v.
John JONES, individually, and in his capacity as a Raton
City Police Officer, Richard Schultz, individually and in
his capacity as the acting Chief of Police for the City of
Raton, Jay Finch, and City of Raton, a chartered
municipality, Defendants-Appellees.
 No. 82-2237.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 24, 1984.
 
 Donald D. Montoya, Santa Fe, N.M., and Richard Rosenstock, Chama, N.M., for plaintiff-appellant.
 Phil Krehbiel, Albuquerque, N.M. (Robert H. Clark, Albuquerque, N.M., with him on brief) of Keleher & McLeod, Albuquerque, N.M., for defendants-appellees.
 Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 This appeal is from a judgment for defendants in a civil rights suit under 42 U.S.C. Sec. 1983. Plaintiff Georgia Varela filed suit based upon her arrest by defendant John Jones, a police officer employed by the City of Raton, New Mexico. Plaintiff also sued Jay Finch, Raton police chief at the time Jones was hired, Richard Schultz, acting police chief at the times of Jones' alleged unlawful conduct, and the City of Raton. The trial court dismissed the City of Raton as a party to the lawsuit and submitted the case against the three policemen to the jury. After the jury returned a verdict in favor of the three defendants, the court denied plaintiff's motion for a new trial. Plaintiff appeals, arguing that the trial judge erred in (1) refusing to recuse himself, (2) refusing to admit evidence regarding defendant Finch's misconduct as Chief of the Raton Police Department, and (3) instructing the jury a) that defendant Jones was entitled to assert a good faith defense to the claims asserted against him in his official capacity as a police officer, b) that Jones was justified in using force if he believed in good faith such force was necessary, and c) that if the jury found Jones acted in good faith it need not determine the liability of the remaining defendants.
 
 
 2
 The case arose out of events occurring on December 31, 1979. On that evening plaintiff and her husband went to Uncle Louie's Bar in Raton to celebrate New Year's Eve. There they got into an argument with one of the owners, Louis Lucero, and left the bar. After arriving home, plaintiff called the Raton Police Department and reported that minors were serving liquor at Uncle Louie's. Plaintiff later went back to the bar to see if the police had investigated her complaint. When she arrived she saw several police officers, including defendant Jones, arresting a male suspect on an unrelated offense. Apparently the officers told plaintiff they had checked out her complaint and found no minors working at the bar; they also asked plaintiff to move her vehicle because it was blocking the flow of traffic. Plaintiff started using abusive language against a police officer and did not move her car. At some point during this scene, Officer Jones placed plaintiff under arrest for disorderly conduct and interfering with police officers. Jones handcuffed plaintiff and drove her to the police station. Plaintiff alleged that Jones "grabbed" her by the breasts to remove her from the police car. Jones denied this charge. He testified that at the police station plaintiff refused to get out of the police car; that he attempted to pick her up and carry her into the station; that he placed one arm underneath her leg and the other behind her shoulder blades; and that in doing so he slipped on the icy ground and fell on plaintiff.
 
 
 3
 At the police station, after several police officers urged Jones to release plaintiff, he dropped the charges against her. A police internal affairs investigation absolved Jones of any charges of improper conduct. Thereafter, plaintiff commenced the suit from which she took this appeal.
 
 
 4
 * Plaintiff argues that the trial judge should have recused himself because Clyde Worthen, a former law clerk of the judge and one of defendant's trial counsel, handled the probate of the estate of the judge's deceased mother during discovery in this case. The judge brought the representation to plaintiff's attention after the trial but denied plaintiff's recusal motion. We may reverse that denial on appeal only if the judge abused his discretion. Chitimacha Tribe v. Harry L. Laws Co., 690 F.2d 1157, 1166 (5th Cir.1982), cert. denied, --- U.S. ----, 104 S.Ct. 69, 78 L.Ed.2d 83 (1984). We find no abuse of discretion in that denial.
 
 
 5
 Under 28 U.S.C. Sec. 144, a federal judge may be disqualified upon a showing of actual bias or prejudice. Plaintiff's motion did not allege that the trial judge was biased against her. See United States v. Professional Air Traffic Controllers Organization, 527 F.Supp. 1344, 1357 (N.D.Ill.1981) ("[P]ersonal bias or prejudice refers to some sort of antagonism or animosity toward a party arising from sources or events outside the scope of a particular proceeding."). Plaintiff does not suggest that the trial judge made any adverse comments about her or her lawsuit, that the judge had personal knowledge of evidentiary facts, that any of his rulings were the product of bias, that he had any personal interest or financial stake in the litigation, or that he was partial toward defense counsel. See Code of Judicial Conduct for United States Judges Canon 3 C (Judicial Conference of the United States 1983). Our review of the record available to us reveals no evidence of less than even-handed treatment of the parties. In short, plaintiff does not make any allegations or present any proof that she lost the case because of the judge's bias, or that bias influenced the judge's rulings.
 
 
 6
 Any claim for disqualification must be based, if at all, on 28 U.S.C. Sec. 455(a). Under that section, "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In United States v. Hines, 696 F.2d 722, 729 (10th Cir.1982), we discussed the scope of Sec. 455(a) and stated,
 
 
 7
 "Although we acknowledge that the intent in amending section 455 was to negate even the appearance of partiality in judicial proceedings, section 455(a) must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice."
 
 
 8
 See also Crider v. Keohane, 484 F.Supp. 13, 15 (W.D.Okla.1979).
 
 
 9
 Plaintiff cites two cases, Smith v. Sikorsky Aircraft, 420 F.Supp. 661 (C.D.Cal.1976), and Potashnick v. Port City Construction Co., 609 F.2d 1101 (5th Cir.), cert. denied, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980), that she believes demonstrate that the trial judge should have disqualified himself from hearing her civil rights case because of his relationship with attorney Worthen. In Sikorsky the trial judge voluntarily disqualified himself from trying a case when plaintiff's law firm retained as co-counsel an attorney who on two previous occasions had represented the judge both personally and in his judicial capacity. In Potashnick the court held that the district judge erred in refusing to disqualify himself. The judge was involved in business dealings with plaintiff's attorney and the judge's father was a senior partner in the firm representing the plaintiff and thus the judge's father could benefit financially from the outcome of the case. Both cases are easily distinguishable from the case at bar.
 
 
 10
 At the time his work commenced on the instant case, in 1980, attorney Worthen was an associate with Keleher & McLeod. Thereafter, in January 1981 William Keleher, another member of the law firm, who had drafted the will of the judge's recently deceased mother, asked Worthen to handle the probate of that estate. Because the judge was named as executor in his mother's will but did not wish to serve in that capacity, Worthen prepared a renunciation form that the judge signed. The probate court appointed the judge's sister as personal representative, and Worthen thereafter completed the probate and closed the estate.
 
 
 11
 Several times during the probate proceedings Worthen wrote to and spoke with the judge, who was a beneficiary of the estate. Because his sister was in poor health, the judge acted as a messenger in carrying legal papers to his sister and in conveying her desires on matters to Worthen. As a courtesy, Worthen sent the judge carbon copies of most letters he wrote in connection with the probate.
 
 
 12
 We hold that the circumstances described do not present a case in which the judge's impartiality in handling the civil rights case at bar might reasonably be questioned. The attorney handling the probate of the judge's deceased mother's estate represented the estate and the personal representative appointed to handle it, not the judge. The judge's mother selected William Keleher of Keleher & McLeod to draft her will; Keleher and his secretary witnessed the will. It was not extraordinary that the personal representative of the estate would select Keleher's firm to handle the probate. There appears to have been nothing unusual in this probate proceeding, no contest or controversy; it consisted of simply inventorying decedent's property, paying taxes and creditors, and distributing the remaining assets according to the will. The attorney apparently charged the estate the normal fee for handling the probate. The judge was not a client of the attorney handling the estate, nor did he appear to be a client, simply because he was a beneficiary under his mother's will. We see nothing sinister in the judge's ill sister relying upon him to bring probate papers to her from the attorney and to convey messages from her to the attorney, nor in the attorney's following the good practice of sending copies of correspondence to the beneficiaries of the estate. Therefore, the trial judge did not abuse his discretion in refusing to disqualify himself.
 
 II
 
 13
 Plaintiff argues that the trial court erred in refusing to admit evidence of alleged sexual harassment of women by defendant Finch, who was Raton police chief at the time Jones was hired. A sheriff's deputy who investigated complaints against Finch testified that female trainees in the Raton police "cadet program" complained that Finch had made sexual advances to them. These trainees ranged in age from fifteen to seventeen. The trainees also allegedly revealed that Finch had served beer to them at a police picnic and that he had gone to a woman's residence, had grabbed her and thrown her on a bed. These incidents occurred shortly before Jones was hired on September 14, 1979. Finch was dismissed as Raton police chief on October 7, 1979. Defendant Schultz replaced Finch on October 12, 1979.
 
 
 14
 Plaintiff argues that evidence of Finch's conduct is relevant to prove that Finch failed properly to train and supervise Jones and that Jones did not act in good faith. We disagree. Finch was police chief for only twenty days after he hired Jones, and the incident involving plaintiff occurred almost three months after Finch's termination. More importantly, there is no evidence that Finch "trained" Jones to mistreat women. We fail to see how the allegations against Finch constitute evidence relevant to the question of improper training and supervision of Jones or to Jones' good faith defense. Jones based his good faith defense on the circumstances surrounding the arrest of plaintiff, not on any contention that he in good faith believed that he could abuse women because Finch abused them. Therefore, the trial judge did not err in refusing to admit evidence of Finch's alleged sexual misconduct.
 
 III
 
 15
 Plaintiff contends, citing Key v. Rutherford, 645 F.2d 880 (10th Cir.1981), and McGhee v. Draper, 639 F.2d 639 (10th Cir.1981), that the trial court erred in instructing the jury, "Officer Jones, as a subordinate police officer, has a defense if he believed in good faith that his actions were lawful and if this belief was a reasonable one for him to hold."
 
 
 16
 Apparently plaintiff believes that Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), discussed in those cases, eliminates good faith as a defense if police officers are sued in their official capacities. What Owen did was eliminate good faith as a defense when a city is sued, and we treat suits against city officials in their official capacities as suits against the city. But the city is not liable under the doctrine of respondeat superior, rather it is liable only if its employees deprived plaintiff of her constitutional rights pursuant to a policy or custom of the city. Monell v. Department of Social Services, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-2036, 56 L.Ed.2d 611 (1978). Such a custom or policy may include its continuing failure to train, supervise, or discipline its police force. E.g., Herrera v. Valentine, 653 F.2d 1220, 1224 (8th Cir.1981); cf. McClelland v. Facteau, 610 F.2d 693, 697 (10th Cir.1979) (liability of police chief). There is no evidence in this case of any city policy or custom that had a role in depriving plaintiff of her constitutional rights.
 
 
 17
 Plaintiff also sued the police officers in their personal capacities, and no decision has eliminated public officials' qualified immunity in such a case. We recently reaffirmed police officers' rights to a good faith defense in a case substantially similar to the one at bar on this issue. Bledsoe v. Garcia, 742 F.2d 1237 (10th Cir. Sept. 4, 1984). The Supreme Court affirmed the existence of such immunity in Harlow v. Fitzgerald, 457 U.S. 800, 815-19, 102 S.Ct. 2727, 2737-2739, 73 L.Ed.2d 396 (1982), announcing an objective standard for determining good faith. Although the instruction the trial court gave in the instant case might have been differently stated had the case been tried after Harlow was decided, we are satisfied it meets the Harlow standard.
 
 IV
 
 18
 Plaintiff contends that the trial judge instructed the jury that a police officer may use unreasonable force in making an arrest if the officer believed in good faith that unreasonable force was necessary. That was not the court's instruction; instead, the trial judge stated in his instructions to the jury,
 
 
 19
 "[A]n officer attempting to carry out his duties is justified in using such force as is reasonably necessary to secure and detain the offender, to overcome her resistance, and to protect himself and others from bodily harm, but he is not justified in using unnecessary force or in resorting to dangerous means. If the officer does use excessive force and in so doing deprives a person of her constitutional rights, that is a deprivation of rights without due process of law. However, if the officer acted in good faith and with probable cause to believe that the force being used was reasonably necessary to secure and detain the offender or to protect himself and others from bodily harm, then no deprivation has occurred, and you need not proceed to determine whether the Defendants are liable for the deprivation of Plaintiff's rights."
 
 
 20
 Our opinion in Bledsoe v. Garcia, 742 F.2d 1237 (10th Cir.1984), holds that police officers are not civilly liable if they act upon a reasonable belief that the amount of force they used is reasonable under the circumstances. The instruction allowed the jury to determine the reasonableness of the force used by Officer Jones.
 
 V
 
 21
 Finally, plaintiff argues that the trial court erred in instructing the jury that if it found that Officer Jones acted in good faith, it need not consider whether Officers Finch and Schultz acted unlawfully. Plaintiff cites Haislah v. Walton, 676 F.2d 208 (6th Cir.1982), and Garner v. Memphis Police Department, 600 F.2d 52, 54 (6th Cir.1979), in support of her argument. Both cases recognized the good faith defense for individual police officers; neither case involved the liability of individuals acting in a supervisory capacity.
 
 
 22
 This court has recognized that supervisors of police officers may be liable for failure adequately to train or supervise personnel under their command. McClelland v. Facteau, 610 F.2d 693, 696-97 (10th Cir.1979). It may be possible to envision circumstances in which a jury could conclude both that a subordinate officer acted in good faith in making an unlawful arrest and that his supervisors were responsible for the mistake. The record in the instant case, however, contains no evidence that defendants Finch or Schultz improperly trained or improperly supervised Jones. Instead, the evidence supports the jury's apparent finding that Jones legitimately believed that plaintiff had created a serious disturbance requiring her arrest, and that Jones only used the force reasonably necessary to take her into custody. Thus, any error by the trial court in instructing the jury on this point was harmless.
 
 
 23
 AFFIRMED.