FILED
United States Court of Appeals
Tenth Circuit

May 17, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JEREMIAH J. ARAGON,

      Plaintiff-Appellant,

v.

CITY OF ALBUQUERQUE;
D. MOORE; and LUCAS
TOWNSEND,

      Defendants-Appellees.

No. 10-2129
(D.C. No. 1:07-CV-00737-LH-ACT)
(D. N.M.)

---

ORDER AND JUDGMENT[*]

---

Before **LUCERO**, **McKAY**, and **GORSUCH**, Circuit Judges.

---

The plaintiff alleges that Albuquerque police officers violated his Fourth

Amendment rights by arresting him for disorderly conduct without probable

cause, and by pursuing him into his home as he sought to evade arrest. But even

assuming (without deciding) that the officers' conduct violated the Constitution,

that's not enough to prevail. It remains the plaintiff's additional burden in a

qualified immunity appeal like this to identify clearly established law at the time

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

of his arrest capable of alerting a reasonable officer that the challenged conduct was unconstitutional. This burden, we hold, the plaintiff hasn't carried.

On a Saturday in 2006, Officer Lucas Townsend was asked to resolve a delicate child custody matter. Pursuant to a court order, a seven year-old child, referred to in the record as "J.G.," should have been with her paternal grandmother, Cathy Gonzales. She was not. The officer suspected that the child's mother, Krupskaya Ugarte, had the child. So the officer went to Ms. Ugarte's apartment building, climbed to the second story where Ms. Ugarte lived, and knocked on the door. J.G. answered and Ms. Ugarte's husband, Jeremiah Aragon, soon joined her. After some discussion, the officer asked J.G. to come with him downstairs.

That's when trouble broke out. As the officer and J.G. descended the steps, they encountered Ms. Ugarte, who quickly became bellicose. The officer decided to arrest her, but as he attempted to do so she began screaming and struggling. No one in this case disputes the legality of the officer's conduct toward, or arrest of, Ms. Ugarte.

Instead, the case turns on what happened next. Mr. Aragon and Ms. Ugarte's father, Jamie Ugarte, decided to involve themselves in the confrontation. Leaning over an upstairs balcony, they began shouting at the officer, protesting

his treatment of Ms. Ugarte, and yelling obscenities.[1] Both men then started down the stairs toward Officer Townsend in an aggressive manner. The officer, concerned for his safety, ordered them not to come closer and threatened the use of pepper spray if they did.

This commotion drew even more commotion. A crowd gathered. The yelling and obscenities continued. A first-floor spectator started toward the officer and had to be restrained by onlookers. The officer called for back-up, using an officer-in-distress code asking responding officers to use lights and sirens to arrive as quickly as possible. Then still another man tried to come down the stairwell toward the officer. And the officer again had to threaten the use of pepper spray, this time brandishing it.

Other officers, including Douglas Moore, responded to the distress call and quickly appeared on the scene. Busy trying to detain Ms. Ugarte, Officer

---

[1] While everyone admits Mr. Ugarte yelled obscenities, Mr. Aragon suggests that a triable factual dispute exists over whether *he* used profanity. In fact, however, the only evidence on the question comes from the sworn testimony by Officer Townsend and his colleague who arrived at the scene later, Officer Douglas Moore. Both testified that Mr. Aragon did use profanities. Mr. Aragon offers no declaration, affidavit, or other potentially admissible evidence from himself or anyone else suggesting otherwise. Instead, he seeks leave to supplement the appellate record with an audio recording made by Officer Townsend's belt recorder that is already part of the district court record. We grant the motion for leave to supplement but find the recording unhelpful. As the district court held, and we agree, the recording is largely unintelligible and, as such, lacks probative value and is incapable of creating a factual dispute. *See Mann v. Yarnell*, 497 F.3d 822, 827 & n.5 (8th Cir. 2007) (rejecting plaintiff's attempt to create a genuine issue of material fact based on the darkness of the videotape and the existence of unintelligible pieces of audio).

Townsend told Officer Moore to arrest Mr. Aragon. Officer Moore heard Mr. Aragon still yelling profanities at Officer Townsend and, following Officer Townsend's direction, headed up the stairs toward Mr. Aragon. As he did, Mr. Aragon ran to his apartment and slammed the front door shut, locking it. Officer Moore saw an adjacent glass door, slid it open, put one foot into the apartment, and called "APD." Mr. Aragon then came toward the officer. The officer pulled him out of the apartment and put him under arrest.

Eventually Mr. Aragon brought this suit under 42 U.S.C. § 1983 against Officers Townsend and Moore, among others, alleging that they had violated his Fourth Amendment rights. Officers Townsend and Moore responded at summary judgment by claiming qualified immunity. In the end, the district court agreed with the officers and entered judgment in their favor.

On appeal before this court, Mr. Aragon pursues two theories. First, he says, Officer Townsend violated his Fourth Amendment rights by ordering his arrest without probable cause to believe he violated any law. Second, he argues that Officer Moore violated the Fourth Amendment by entering his home without a warrant. Qualified immunity, Mr. Aragon says, protects neither officer from liability.

In this and any qualified immunity appeal, the plaintiff bears the "heavy two-part burden" of showing (1) the defendant's violation of a constitutional right; and (2) the "infringed right at issue was clearly established at the time of

- 4 -

the allegedly unlawful activity such that a reasonable law enforcement officer would have known that his or her challenged conduct was illegal." *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007). Failure on either element, taken in whatever order, is fatal to the plaintiff's cause. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). In this case, we hold, both of Mr. Aragon's claims fail on the second element.

With respect to his first claim, Mr. Aragon has not shown that a reasonable officer in Officer Townsend's shoes would have known that he lacked probable cause to order Mr. Aragon's arrest.

The officers arrested Mr. Aragon for disorderly conduct, a violation of N.M. Stat. Ann. § 30-20-1. As interpreted by the New Mexico courts, the statute requires the presence of two things. First, a defendant's conduct must be "violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly." § 30-20-1(A). Second, the conduct must also "tend[] to disturb the peace." *Id*.; *see also State v. Florstedt*, 419 P.2d 248, 249 (N.M. 1966) (defining "disturbing the peace" as "a disturbance of public order by . . . any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community").

We agree with the district court that a reasonable officer could well have thought these conditions met in this case. The undisputed facts show that Mr. Aragon was yelling and using profanities at Officer Townsend, sought to

- 5 -

approach the officer in a threatening manner, drew a crowd from surrounding apartments, and incited at least two other individuals to attempt to approach the officer in a similarly threatening manner. All this caused the officer to fear for his safety, send an officer-in-distress signal, and threaten the use of pepper spray twice. Whether or not the officer actually had probable cause to arrest Mr. Aragon on these facts — whether or not Mr. Aragon can overcome the first prong of the qualified immunity inquiry — we do not need to decide. Whatever the outcome of that question, a reasonable officer could well have thought both elements of New Mexico's disorderly conduct law satisfied at the time the events here took place. And that means Mr. Aragon's claim fails at qualified immunity's second step.

Seeking to avoid this conclusion, Mr. Aragon cites several cases that, he says, show that the law at the time clearly established that his arrest lacked probable cause. None, however, does so much.

By way of example, Mr. Aragon cites *State v. Doe*, 583 P.2d 464 (N.M. 1978), where a juvenile was arrested for disorderly conduct after he loudly objected to a traffic stop. Reversing the conviction, the court held that "the defendant was not 'combative,' nor was it apparent that his words or actions would produce violence or disturb the peace." *Id.* at 466. Indeed, the court emphasized that the defendant "made no gesture or movement toward the officers." *Id.* He was, instead, simply "angry and had his fist clenched." *Id.*

- 6 -

None of this helps Mr. Aragon's cause. Unlike the defendant in *Doe*, Mr. Aragon did not just loudly object to the officer's conduct. He aggressively approached the officer in a threatening manner, drew a crowd, and incited others to repeat his threatening movements toward the officer. *Doe* is, thus, little like this case and so does not *clearly* establish the illegality of Officer Townsend's conduct.

Alternatively, Mr. Aragon cites *State v. Hawkins*, 991 P.2d 989 (N.M. Ct. App. 1999). The court there reversed a disorderly conduct conviction based on the fact that the defendant simply yelled obscenities at the police. The court held that law enforcement officers, unlike private citizens, are required to have a "higher tolerance" for offensive language. *Id.* at 991. At the same time, the court took care to note that the State's concern — that the yelling might incite nearby workmen to breach the peace — was "simply speculation" on the facts of the case before it. *Id.* at 992. "[T]here was no evidence," the court said, "that [the men] were negatively affected by or reacted in any way to the [defendant's] statements." *Id.* If the facts of the case had been otherwise, the court suggested, its result might have been different. The court went on to cite favorably a Florida decision affirming a disorderly conduct conviction where the "defendant's . . . accusatory tirade . . . [had] excited the gathering crowd to the point that the officers' safety became a concern." *Id.* at 992 (citing *Marsh v. State*, 724 So. 2d 666, 666 (Fla. Dist. Ct. App. 1999)).

Again, we can't see how any of this helps Mr. Aragon. Unlike in *Hawkins* and much more like the Florida case it cited favorably, Mr. Aragon's conduct *did* affect the conduct of others. He didn't just shout obscenities at Officer Townsend. He also approached the officer in a threatening manner and had to be warned off with the threat of pepper spray. He incited a nearby man to try to scale a porch railing between him and the officer, causing the officer to send a distress call. And he incited yet another man to start down the stairs toward the officer, requiring the officer again to threaten the use of pepper spray. Unlike in *Hawkins*, Officer Townsend's concern that Mr. Aragon's conduct was inciting others was not a matter of speculation; it is borne out by the undisputed facts.[2]

That leaves us with Mr. Aragon's second claim, this one against Officer Moore. Mr. Aragon says the officer violated his Fourth Amendment rights by entering his apartment without a warrant. Mr. Aragon rightly notes that the home enjoys special solicitude under the Fourth Amendment — and that seizures in the home without a warrant "are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980).

---

[2] Mr. Aragon's brief discusses the First Amendment's protections of speech but only in aid of his argument that he didn't commit disorderly conduct and so his arrest violated the *Fourth* Amendment. Nowhere does Mr. Aragon's brief or complaint press the argument that New Mexico's disorderly conduct statute is *itself* an unconstitutional infringement on the First Amendment, or that a reasonable officer in Officer Townsend's position should have surmised as much.

At the same time, however, it is equally well-settled that the warrant requirement doesn't pertain and an intrusion into the home may be lawful when the officer has both probable cause to effect an arrest *and* the arrest involves "exigent circumstances" such as a threat to officer safety or the "hot pursuit" of a fleeing suspect. *United States v. Martin*, 613 F.3d 1295, 1299 (10th Cir. 2010). In this case, we have already explained that a reasonable officer could have thought he had probable cause to effect Mr. Aragon's arrest. The issue remaining, then, is exigency. And at the second step of a qualified immunity appeal the question we must ask is whether Mr. Aragon has identified clearly established law at the time of his arrest that would have precluded a reasonable officer from thinking exigent circumstances existed in his case.

On that score, Mr. Aragon fails. He cites no case law clearly establishing that the officer safety exception was unavailable to a reasonable officer in Officer Moore's shoes in 2006. If anything, our decision in *Cruz v. Gutierrez*, Nos. 99-2358 & 99-2364, 2000 WL 1786743 (10th Cir. Dec. 6, 2000) (unpublished), might have suggested the opposite conclusion. There, as here, the defendant threatened an officer and then fled to a nearby house to avoid arrest. *Id.* at *1-2. When the defendant refused to come out, an officer there, not unlike here, forcibly removed and arrested him. *Id.* at *2. In these circumstances, we held exigency justified the officer's warrantless entry because a reasonable officer could "suspect that [the defendant] . . . fled in order to arm himself." *Id.* at *3.

The same problem exists with respect to hot pursuit. The Supreme Court has long held that "a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *United States v. Santana*, 427 U.S. 38, 43 (1976). And recently, this court has said the same. *See Sanchez v. Ulibarri*, 308 F. App'x 280, 284-85 (10th Cir. 2009) (unpublished) (holding that a suspect may not "thwart an otherwise proper arrest that was set in motion in public by fleeing and retreating to his home."). Neither did those cases indicate that hot pursuit ends the split second a suspect runs into his home and closes the front door behind him. Given holdings such as these, we are hard pressed to say that Mr. Aragon has met his burden of showing it was clearly established in 2006 that a reasonable officer could not continue to pursue Mr. Aragon, as Officer Moore did, to complete an arrest he had set out in public to effect.

Seeking to avoid this result, Mr. Aragon cites *Welsh v. Wisconsin*, 466 U.S. 740 (1984). But *Welsh* addressed a very different claim of exigency — the fear that physical evidence might be destroyed in the home without a prompt warrantless entry. *Welsh* held that this fear does not always justify a warrantless entry. But *Welsh* did not speak to the hot pursuit of a "suspect [seeking] to evade an otherwise proper arrest" — a fact we recently recognized in *Sanchez*. 308 F. App'x at 285 n.2. Neither did *Welsh* speak to the officer safety exigency. And Mr. Aragon's citations to this circuit's decisions in *United States v. Aquino*, 836

F.2d 1268 (10th Cir. 1988), and *Howard v. Dickerson*, 34 F.3d 978 (10th Cir. 1994), suffer from the same problem: neither dealt with the officer safety or hot pursuit exceptions.

Mr. Aragon replies that the hot pursuit exception should be limited to fleeing felons. But whatever the merits of that argument, it wasn't clearly established law at the time of Mr. Aragon's arrest. In *Bledsoe v. Garcia*, 742 F.2d 1237 (10th Cir. 1984), we held that exigency justified an officer's warrantless home entry to apprehend a suspect who was evading arrest, just as here, from a jailable misdemeanor. *Id.* at 1241. And recently, we reached a similar conclusion with respect to an individual evading arrest for traffic offenses. *See Sanchez*, 308 F. App'x at 285. Thus, the rule Mr. Aragon advocates, whatever its merits, simply wasn't clearly established in case law as of 2006.

Our holding should not be misconstrued. We do not address the question whether Officer Moore's conduct was or wasn't constitutional. We do not hold that the officer safety or hot pursuit exceptions were or weren't actually triggered. We do not pass on what the proper boundaries of the hot pursuit and officer safety exceptions should be. Instead, we hold only that Mr. Aragon hasn't met his burden of establishing that the law at the time of his arrest clearly precluded a reasonable officer from thinking those exceptions were available. For this reason alone we hold that Mr. Aragon's claim against Officer Moore fails.

The judgment of the district court is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge