579 A.2d 915

**TURNER CONSTRUCTION, INC., Appellee,**

v.

**AMERICAN STATES INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued May 9, 1990.

Filed Aug. 16, 1990.

Petition for Allowance of Appeal
Denied Jan. 11, 1991.

---

Jack W. Plowman and Marshall J. Conn, Pittsburgh, for appellant.

Brian W. Ashbaugh and Rhoda Shear Neft, Pittsburgh, for appellee.

Before CAVANAUGH, JOHNSON and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The plaintiff-appellee, Turner Construction, Inc. instituted this action against defendant-appellant, American States Insurance Company, seeking damages pursuant to a performance bond which American States had issued on behalf of Ram Construction Company. Ram had been hired by Turner to act as a subcontractor on a project in Pittsburgh. After a trial, a jury rendered a verdict in favor of Turner and against American States, in the sum of $349,200.00, the amount of the surety bond. Thereafter, American States filed a motion for post-trial relief, seeking either judgment n.o.v. or the grant of a new trial. The motion was denied by the trial court and judgment in favor of Turner was thereafter entered. The instant appeal followed.[1]

The record shows that in July, 1980, Turner entered into an agreement with Oxford Development Company which called for Turner to act as construction manager for the construction of a garage in Pittsburgh for Oxford. As construction manager, Turner contracted with various subcontractors to fulfill the construction tasks necessary to complete the garage project.

One of the subcontractors was Ram, which entered into a contract with Turner to perform excavating and backfilling

---

1. This appeal is stated to be an appeal from the order denying post-trial relief, which is of course, not a final and appealable order. *General Electric Credit Corp. v. Aetna Cas. & Sur. Co.,* 437 Pa. 463, 263 A.2d 448 (1970). Since judgment has been entered, however, we treat the appeal as being from the judgment entered in favor of Turner. See, Pa.R.A.P. 905.

work on the project. The excavation work was performed first. The backfilling took place after the foundation for the garage was constructed by others. The backfilling function involved placing earth materials between the completed foundation walls and sheeting which had been erected to hold back the surrounding earth materials while the foundation was being constructed. The excavation work performed by Ram was apparently done satisfactorily. However, its completion of the backfilling operation gave rise to the dispute underlying this action.

Oxford, as owner of the project, was not a party to the contract between Turner and Ram. Under the terms of the Turner–Ram agreement, Ram was required to post a performance bond in the amount of $349,200.00, to cover its work on the project. American States issued such a performance bond, which named it as surety, identified Ram as the principal, and designated Turner as the sole obligee. Oxford was also not a party to the surety bond.

The Turner–Ram contract contained certain specifications for Ram in completing the backfilling operations. Included were requirements for the compacting of the materials which were to be used for the backfilling operation, including the thickness of each layer of material. Under the contract, Ram was held responsible for performing all work in accordance with contract documents.

Ram began the backfilling operations in May, 1982, and finished them on August 6, 1982. During the course of such operations, Ram submitted to Turner some samples of the materials being used. On a couple of occasions, Turner raised questions concerning the ongoing efforts of Ram, and Ram took corrective action to address questions or complaints raised by Turner. Moreover, there were a couple of tests performed during the backfilling operation, to determine the degree of compaction and/or other matters.

Ram's work was apparently accepted by Turner and Ram was paid by Turner on December 6, 1982. In the late summer or early fall, 1983, Turner and Oxford became aware of subsidence of sidewalks around the project, in the

areas which had been backfilled by Ram. By letter dated February 1, 1984, Oxford gave Turner a written notice of the problem. Turner thereafter notified Ram of the problem by a letter dated February 15, 1984. When it received no timely response to its letter, Turner informed Ram's surety, American States, of the problem. Thereafter, Ram responded to Turner in a letter dated August 9, 1984, denying responsibility for the sidewalk subsidence and expressing a refusal to repair the problem.

The agreement between Turner and Ram, in Article XXI, which was titled "Guarantees", including the following pertinent provisions:

The Subcontractor [Ram] hereby guarantees the Work to the full extent provided in the Plans, Specifications, General Conditions, Special Conditions and other Contract Documents.

The Subcontractor shall remove, replace and/or repair at its own expense and at the convenience of the Owner [Oxford] any faulty, defective or improper work, materials or equipment discovered within one (1) year from the date of the acceptance of the Project as a whole by the Architect and the Owner or for such longer period as may be provided in the Plans, Specifications, General Conditions, Special Conditions or other Contract Documents.

Without limitation by the foregoing, the Subcontractor shall pay in addition for all damage to the Project resulting from defects in the Work and all costs and expenses necessary to correct, remove, replace and/or repair the Work and any other work or property which may be damaged in correcting, removing, replacing or repairing the Work.

The evidence showed that the project was "accepted as a whole" by Oxford on June 26, 1984. As indicated earlier, on August 9, 1984, Ram notified Turner of Ram's refusal to attend to the sidewalk problems attributed to improper backfilling. This civil action was commenced by Turner on June 21, 1985.

In its appeal to our court, American States raises three principal contentions of error. First, it claims that a recovery by Turner from American States on the subcontractor's surety bond will create a windfall, where Turner had no underlying liability to Oxford for any claim of damages. In support of this position American States contends that Oxford did not prove any claim against Turner, and that any claim by Oxford against Turner was time-barred. Further, American States maintains that Oxford waived any claim it might have against Turner by its final payment, even though the damage allegedly resulting from Ram's defective work was known at the time.

We agree with the trial court's determination that such arguments by American States provided no defense for the claims asserted by Turner in this action. Turner did not bring this action as an indemnity action, seeking reimbursement for damages or liability to Oxford. Rather, this suit involved a claim for breach of a construction contract between Turner and Ram, under which performance was secured by the bond of American States.

The law in our Commonwealth is specific in describing what types of agreements shall constitute contracts of suretyship. The Act of July 24, 1913, P.L. 971, § 1, 8 P.S. § 1 provides that every written agreement made by one person to another for the default of another, shall subject such person to the liabilities of suretyship unless such agreement shall contain words substantially providing that the agreement is not intended to be a contract of suretyship. The agreement between Turner, Ram and American States included no language which either expressly or impliedly disclaimed a suretyship obligation from American States to Turner with respect to Ram's satisfactory completion of its construction contract with Turner. In fact, the underlying contract between Turner and Ram was incorporated by reference into the bond. The bond language provides for American States to guarantee to Turner the full performance by Ram of its obligations under the subcontracting agreement.

Moreover, Oxford was not a party to the performance bond provided by American States. The bond contains a clause which states that its guarantees would be for the sole benefit of the obligee, which was Turner.

Accordingly, any liability or claim between Oxford and Turner is not relevant. It is clear that the only agreement at issue in this litigation was the performance bond under which American States guaranteed the performance of Ram to Turner. The jury, after considering all of the evidence, determined that Ram did not fulfill its contractual performance obligations to Turner, which entitled Turner to damages. Turner did not base its complaint or claims upon any indemnity right to cover any possible obligation or payment to Oxford. Therefore, whether Oxford had any right to sue or otherwise collect from Turner as a result of Ram's failure to perform provided no basis for precluding Turner's recovery against American States on the bond.[2]

---

**2.** The nature of this type of relationship was discussed by the United States Court of Appeals for the Third Circuit, in *Pierce Associates, Inc. v. Neumours Foundation*, 865 F.2d 530, 535–6 (3rd Cir.1989), where it stated:

Typically when major construction is involved an owner has neither the desire nor the ability to negotiate with and supervise the multitude of trades and skills required to complete a project. Consequently an owner will engage a general contractor. The general contractor will retain, coordinate and supervise subcontractors. The owner looks to the general contractor, not the subcontractors, both for performance of the total construction project and for any damages or other relief if there is a default in performance. Performance and the payment of damages are normally assured by the bond of a surety on which the general contractor is principal and the owner is the obligee.

The general contractor, in turn, who is responsible for the performance of the subcontractors, has a right of action against any subcontractor which defaults. Performance and payment of damages by a subcontractor are normally assured by the bond of a surety on which the subcontractor is principal and the general contractor is the obligee.

Thus the typical owner is insulated from the subcontractors both during the course of construction and during the pursuit of remedies in the event of a default. Conversely, the subcontractors are insulated from the owner. The owner deals with and, if necessary, sues the general contractor, and the general contractor deals with and, if necessary, sues the subcontractor.

■ The second major contention by American States in support of its appeal is that it cannot be held liable in circumstances where Ram performed its work in accordance with contract plans and specifications, even if the work product turned out to be insufficient or inadequate. In support of this position, American States points out that Turner based its theory of recovery on the contention that Ram performed defectively in backfilling the project because Ram inadequately compacted the fill. American States maintains that Ram performed the backfilling in the manner called for under the subcontracting agreement, in full conformity with all of the plans and specifications provided therein. American States asserts that the agreement did not contain any provisions requiring a particular amount or level of compaction to be achieved under the sidewalks which surrounded the project. In support of this position, American States cites several cases which hold that a contractor which performs work according to the plans provided by the owner is not responsible for the adequacy of the work.

It is evident that in raising this argument, American States is contesting the sufficiency of the evidence to support the jury's determination that Ram had failed to fulfill its performance obligations under the subcontracting agreement. The record shows that Turner provided testimony from an expert witness regarding the compaction standard for the backfilling operations as well as testimony to establish Ram's failure to meet that standard. Further, we note that the Turner–Ram agreement detailed several standards for the filling, backfilling and compaction. These included specific percentage standard densities, under recognized scientific or construction standards, for all such work. Turner provided testimony by an expert witness to support its claim that Ram's performance failed to meet such standards. It is obvious that the jury credited such testimony in reaching its determination that Ram's performance had not met the requirements of its contract with Turner. The jurors certainly had sufficient evidence on which to base

such findings, and we therefore reject the second contention of error by American States.

■ The final argument raised by the appellant is that the claims of Turner were barred by the one year statute of limitations applicable to performance bonds.[3] In this regard, American States claims that Turner became aware of the sidewalk subsidence problem in February, 1984, and was required to institute its action on the performance bond no later than one year after that date. On that basis, it is maintained that because the instant action was filed in June, 1985, it was untimely. We cannot agree.

No right of action arose on the performance bond until Ram failed to perform in accordance with its agreement with Turner. That subcontractor's agreement, as noted above, provided that Ram had a duty to remedy any faulty, defective or improper work discovered within one (1) year from the date of the acceptance of the project as a whole. The record established that the project as a whole was accepted by Oxford on June 26, 1984. Ram's default in performance did not occur until August 9, 1984, when Ram wrote to inform Turner that it would not honor its contractual obligation to attend to the problems with the settling of the sidewalks in the areas where its backfilling had occurred.

Although the possibility of problems concerning the backfilling were known to Turner more than one year prior to June 21, 1985, when this action was instituted, Ram's actual failure of performance did not arise until August, 1984, when it declared its unwillingness to comply with its obligation to remedy its derelictions in performance. In these circumstances, we agree with the trial court's finding that Turner's action against American States was instituted within one year of the occurrence of Ram's default in its performance obligations. Thus, there was no violation of

3. This one year period of limitations is provided by the Act of December 20, 1982, P.L. 1409, No. 326, art. II, Section 201, 42 Pa.C.S.A. § 5523.

the applicable statute of limitations, and we reject the final claim of error raised by American States.

Judgment is hereby affirmed.