**MONTGOMERY COUNTY, Plaintiff,**

**v.**

**MICROVOTE CORPORATION, Carson Manufacturing Company, Inc., and Westchester Fire Insurance Company, Defendants.**

**No. CIV.A. 97-6331.**

United States District Court, E.D. Pennsylvania.

June 25, 2001.

John M. Elliott, Timothy T. Myers, Brian J. McCormick, Jr., Krista K. Beatty, Elliott, Reihner, Siedzikowsky, North and Egan, P.C., Union Meeting Corporate Center V, Blue Bell, PA, for Montgomery County.

Samuel E. Klein, Robert C. Clothier, III, Hope S. Freiwald, Louise E. Moyer, Dechert, Price & Rhoads, Philadelphia, PA, Robert J. Kerns, Landis, Kerns and Associates, Lansdale, PA, Walter E. Bravard, Jr., John R. Price, Indianapolis, IN, for Microvote Corporation.

Robert T. Carlton, Jr., Jennifer B. Grills, Ellsworth, Wiles & Chalphin, P.C., J. Stephen Woodside, Ellsworth, Carlton & Waldman, PC, Philadelphia, PA, for Westchester Fire Insurance Co., Inc.

Robert T. Carlton, Jr., Ellsworth, Wiles & Chalphin, P.C., Philadelphia, PA, for Universal Bonding Insurance Company.

## *MEMORANDUM*

ROBERT F. KELLY, District Judge.

This is the second in a series of three decisions on Post-trial Motions filed by the parties, the Plaintiff, Montgomery County, Pennsylvania ("the County"), and two Defendants, Microvote Corporation ("Microvote") and Westchester Fire Insurance Company ("Westchester"), following a ten day jury trial. The issue presented for the jury's determination as to the County's claim against Westchester was whether Westchester was liable to the County un-

der a performance bond. Presently before the Court are Westchester's Post-trial Motions which include: (1) Motion for Judgment as a Matter of Law on Statute of Limitations; (2) Motion for Relief from Judgment; and (3) Motion to Set Aside Judgment or for New Trial.

## I. *MOTION FOR JUDGMENT AS A MATTER OF LAW—STATUTE OF LIMITATIONS.*

Westchester separately renews its Motion originally made at trial, pursuant to Federal Rules of Civil Procedure 50(b) and 59, for judgment as a matter of law against the County for Count VI of the County's Complaint, the action on the performance bond. Westchester claims this cause of action is barred by a one year statute of limitations pursuant to 42 Pa. C.S.A. section 5523(3).[1] Because the County filed this action on October 10, 1997, Westchester contends that the County's cause of action must have accrued no later than October 10, 1996 for this claim to be timely. The leading Pennsylvania case in this area is *Turner Construction, Inc. v. American States Insurance Co.*, 397 Pa.Super. 29, 579 A.2d 915 (1990), *app. denied*, 527 Pa. 603, 589 A.2d 693 (1991), in which the court held that the cause of action on a performance bond accrues at the time of the principal's default. *Id.* at 919. Westchester contends that the County had "discovered" Microvote's alleged "default" by June 28, 1996 at the latest, and any action on the performance bond should have been brought within one year of that date, or by June 28, 1997. Because this action was not filed on or before June 28, 1997, Westchester contends that it is time-barred.

Westchester also argues that the posting of the performance bond was discretionary and the County is not entitled to invoke the doctrine of nullum tempus occurit regi ("nullum tempus") on this claim.[2] The United States Court of Appeals for the Third Circuit ("Third Circuit") explained the doctrine of nullum tempus as follows:

> under the doctrine of nullum tempus, statutes of limitations are not applicable to actions brought by the Commonwealth or its agencies unless a statute expressly so provides. The rationale of this rule is that the Commonwealth, as a plaintiff, seeks the vindication of public rights and the protection of public property.

*City of Phila. v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 118 (3d Cir.1993) (citations omitted). While Westchester states that if the County is an agency of the Commonwealth, its claims would not be time barred, it also cites *City of Philadelphia v. Holmes Electric Protective Co. of Philadelphia*, 335 Pa. 273, 6 A.2d 884 (1939), in which the Pennsylvania Supreme Court stated that "the immunity of the sovereign from subjection to statutes of limitations does not, in the absence of express provisions to the contrary, extend to municipalities, counties, townships or boroughs." *Id.* at 887 (citations omitted). The *Holmes*

1. Section 5523(3) provides that an "action upon any payment or performance bond" must be commenced within one year. 42 Pa.C.S.A. § 5523(3).

2. The doctrine of nullum tempus occurit regi literally means "time does not run against the king." Under the doctrine, "statutes of limitations do not apply to the plaintiff Commonwealth unless the statute specifically so provides. Since its adoption in this country, the rationale for the doctrine of nullum tempus has been the preservation of public rights, revenues and property from injury and loss." *Altoona Area Sch. Dist. v. Campbell,* 152 Pa. Cmwlth. 131, 618 A.2d 1129, 1132 (1992), *appeal denied,* 535 Pa. 639, 631 A.2d 1010 (1993) (citations omitted).

*Electric* court added that nullum tempus is only available to political subdivisions such as counties in the following very limited circumstances:

> statutes of limitations cannot be pleaded against such political subdivisions when they are seeking to enforce strictly public rights, that is, when the cause of action accrues to them in their governmental capacity and the suit is brought to enforce an obligation imposed by law as distinguished from one arising out of an agreement voluntarily entered into by the defendant.

*Id.* Because the County is a political subdivision and not a Commonwealth party, Westchester claims that in order to enjoy the benefit of nullum tempus, the County's claim against the performance bond must: (1) accrue to it in its governmental capacity; and (2) seek enforcement of an obligation imposed on Westchester by law rather than a voluntary agreement.

The Third Circuit applied this test in *Lead Industries* and held that the city was not entitled to the benefit of nullum tempus in a suit against manufacturers of lead pigment and their trade association to recover the costs of abating lead-based paint from HUD-associated housing units. 994 F.2d at 120–21. Westchester argues that this case resembles *Lead Industries* because the claims involved are common law contract and tort claims arising out of voluntary agreements. *Id.* at 120. Westchester also states that the County and Microvote voluntarily contracted to purchase and sell voting machines and the County has not alleged that it was required by law, as an agency of the legislature, to purchase voting machines. Section 2642(c) of the Election Law, 25 P.S. § 2642, authorizes County Boards of Elections to purchase voting machines. Further, 25 P.S. section 3031.2 provides that any County may, by a majority vote of its qualified electors, authorize and direct the use of an electronic voting system. 25 P.S. § 3031.2. These Pennsylvania provisions, according to Westchester, are purely permissive and, under the Third Circuit's analysis in *Lead Industries,* the County is not entitled to the benefit of nullum tempus because the County did not have an obligation to purchase the electronic voting machines by law rather than by voluntary agreement. *Lead Indus.*, 994 F.2d at 120–21.

Moreover, Westchester states that, even if the County was obligated by law to purchase voting machines, it was not obligated to obtain a performance bond. This issue is controlled, according to Westchester, by 16 P.S. section 5001(c), which makes the posting of a 50% performance bond a matter solely within the discretion of County Commissioners.[3] Westchester distinguishes the instant case from other situations which mandate that parties post a performance bond, such as (1) the Miller Act, 40 U.S.C. § 270a, which mandates that contractors post a performance bond and a payment bond on all federal government construction contracts; and (2) Pennsylvania's Public Works Contractors Bond Law of 1967, 8 P.S. §§ 191–202, which mandates that the contracting body obtain from every contractor a performance bond and payment bond for 100% of the con-

3. Section 5001(c) provides:

> The successful bidder, when advertising is required herein, shall be required to furnish a bond with suitable reasonable requirements guaranteeing performance of the contract, with sufficient surety in the amount of fifty per centum (50%) of the amount of the contract, within thirty (30) days after the contract has been awarded, unless the commissioners shall prescribe a shorter period or *unless the commissioners shall waive the bond requirement in the bid specification.*

16 P.S. § 5001(c)(emphasis added).

tract price. Additionally, Westchester notes that the County Commissioners did not obtain a bond from Sequoia Pacific, the company with which it contracted for the replacement voting machines. Rather, Sequoia Pacific posted a letter of credit subject to New York law.

The County labels Westchester's voluntary bond argument contrived and states "it is undeniable that the Commissioners did not waive such a requirement and in fact demanded that the Performance Bond be procured, which it was." (County's Opp'n Westchester's Mot. for J. as Matter of Law at 9.) The County distinguishes *Lead Industries* because in that case, the Performance Bond and contract were entered into voluntarily. *Id.* at 9 n. 3 (citing *Lead Indus.*, 994 F.2d at 119). Here, they were mandated by Pennsylvania law and the Montgomery County electorate. *Id.* at 9. More importantly, the County notes that Westchester fails to recognize or even acknowledge this Court's prior Memorandum Opinion which rejected Westchester's arguments against nullum tempus and the statute of limitations. *See Montgomery County v. MicroVote,* 23 F.Supp.2d 553 (E.D.Pa.1998). In that prior decision, this Court stated:

> In the instant case, the County has a duty "[t]o purchase, preserve, store and maintain primary and election equipment of all kinds, including voting booths, ballot boxes and voting machines." 25 P.S. § 2642(c). Further, the County's citizens voted to replace their manual voting machines with electronic machines. The County was then required by law to purchase electronic machines. 25 P.S. § 3031.4(a). Therefore, a claim arising out of the contract to purchase the DREs [electronic voting machines] accrues to the County in its governmental capacity and would be brought to enforce an obligation imposed by law. Thus, the County may invoke [the doctrine of] *nullum tempus* to defeat a statute of limitations.

*Id.* at 556.

Westchester attempts to distinguish this Court's prior reliance on *Altoona Area School District v. Campbell,* 152 Pa. Cmwlth. 131, 618 A.2d 1129, 1135 (1992), *appeal denied,* 535 Pa. 639, 631 A.2d 1010 (1993), regarding the issue of whether the performance bond can be viewed separately from the underlying transaction to determine the applicability of nullum tempus. *Montgomery County v. MicroVote,* 23 F.Supp.2d at 555. Westchester states that *Campbell* is distinguishable because the court in that case decided first that nullum tempus did not apply because the underlying contract was entered into voluntarily. *Campbell,* 618 A.2d at 1134. The *Campbell* court was not asked to determine whether the performance bond should be analyzed separately, an issue which was neither raised by the surety nor necessary for the court's decision. *See generally, Campbell,* 618 A.2d at 1129. Westchester argues that the situation in the instant case is wholly different from *Campbell* and this case involves an arguably mandatory contract but a discretionary bond, whereas *Campbell* involved a discretionary contract and a mandatory bond. *Id.* Thus, Westchester contends that this Court erred in looking to *Campbell* for guidance regarding the issue of whether the performance bond can be viewed separately from the transaction in order to determine if nullum tempus is applicable. *Montgomery County v. MicroVote,* 23 F.Supp.2d at 555–56.

Westchester argues that this Court should view the County in a similar fashion as the Honorable James McGirr Kelly of this district court viewed school districts in *In re Asbestos School Litigation,* 768 F.Supp. 146 (E.D.Pa.1991), wherein Judge Kelly held that the school districts seeking

to recover damages for injury to district property resulting from asbestos manufacturers' alleged placement of asbestos-containing materials in the districts' school buildings were not acting in a role that was exclusively governmental "'but rather [are] seeking a judgment against alleged [tortious actors], just as any private litigant having standing could do.'" *Id.* at 152 (quoting *Borough of West Fairview v. Hess*, 130 Pa.Cmwlth. 385, 568 A.2d 709, 713 (1989)). However, Westchester fails to acknowledge that this Court previously determined that "a claim arising out of the contract to purchase the DREs accrues to the County in its governmental capacity and would be brought to enforce an obligation imposed by law." *See Montgomery County v. MicroVote*, 23 F.Supp.2d at 555. Thus, the distinction drawn by the County is a distinction without a difference and this Court will not change or modify its prior ruling that the doctrine of nullum tempus is applicable in this matter.

Finally, Westchester argues that the doctrine of nullum tempus was abrogated by the Pennsylvania Legislature when it enacted the Judiciary Act of 1976, in which the Legislature codified actions to which no statute of limitation applies. *See* 42 Pa.C.S.A. § 5531. Westchester provides no support for this statement. The limited scope of section 5531 makes clear, however, that the legislature did not intend to alter the rule of the common law by enacting this section of the Judicial Code. *See Commonwealth v. Hartman*, 17 Pa. D & C.3d 450 (1980). Thus, Westchester's Motion for Judgment as a Matter of Law on the statute of limitations issue is denied.

## II. *MOTION FOR RELIEF FROM JUDGMENT.*

Westchester also moves this Court for relief from judgment, asking for a reduction of the jury's $1,048,500 verdict amount against Westchester to $311,500, deducting both $587,000, the amount of the Carson–County settlement, and $150,000, the amount the jury found Westchester was prejudiced. The grounds for Westchester's Motion are that: (1) the judgment has been partially satisfied by Carson's settlement of $587,000 with the County; and (2) Westchester has been further discharged in the amount of $150,000 by reason of the County's failure to timely notify Westchester of Microvote's default. Westchester claims that if this Court finds that Westchester's credit is already contained in the $1,048,500 damage amount, that finding would extend an improper windfall or credit to Microvote. (Westchester's Mem. Law in Supp. Mot. for Relief from J. at 8.) Thus, Westchester argues that, by law, Microvote could never receive the benefit of a $150,000 reduction of its damages due to the County's conduct that prejudiced Westchester's ability to draw upon the letter of credit before it expired. (*Id.*)

### A. Whether Westchester's Judgment Has Been Partially Satisfied By the Carson–County Settlement.

The County responds to the first argument presented by Westchester, that the judgment has been partially satisfied by the Carson–County settlement, by citing cases dealing with personal injury and tort law. Westchester distinguishes these cases on the basis that it is a surety, and tort law concepts of indemnity, contribution and apportionment of damages do not apply in this action against it. Indeed, "[w]arranty actions are contract actions, not tort actions for which there can be 'joint tortfeasors.'" *Kriscuinas v. Union Underwear Co.*, No. 93–4216, 1994 WL 523046, at *10 (E.D.Pa. Sept.27, 1994)(citing *Step–Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 652 n. 10 (3d

Cir.1990)(warranty actions are contractual in nature)). Westchester further states that none of the cases cited by the County support the County's theory on apportionment of damages. Rather, Westchester maintains that the County ignores the fact that Westchester is the surety that bonded the transaction. As such, Westchester claims that it is entitled to have its monetary obligations to the County discharged to the extent of the consideration given by Carson, stating that "it is undisputed that Montgomery County has recourse against Westchester and Microvote for Carson's breach of implied warranty of merchantability." (Westchester's Reply Mem. at 7.)

Further, as between both Carson and Westchester and Carson and Microvote, Westchester argues that Carson ought to bear the cost of any breach of its implied warranty of merchantability. This argument is based on this Court's response to a jury question about the differences between implied warranty of merchantability and implied warranty of fitness for particular purpose. According to Westchester, this Court instructed the jury there was no difference between the two warranty concepts. Because the only claim against Carson was for implied warranty of merchantability, Westchester argues that this Court should give full credit to it and Microvote for Carson's settlement on the same issue.

Westchester also argues that, in this case, the jury has determined the full extent of the County's damages is $1,048,500 and the County cannot recover more because the County will be unjustly enriched if it is permitted to realize the full amount of the settlement and the judgment. (Westchester's Mem. Law in Supp. Mot. for Relief from J. at 5–6.) The County argues, as it did in its response to Microvote's Post-trial Motions, that Carson was a volunteer and not a joint tortfeasor, therefore no set-off could be apportioned for the County–Carson settlement. The County also states that Carson and the County did not execute a settlement release, rather they executed a Covenant Not to Sue. (County's Opp'n at 5 n. 5.)

In a previous opinion in this case in which Microvote's Post-trial Motion to Amend the Judgment to Reflect the Carson–County settlement was denied, this Court recognized the County's correct argument that because neither Microvote nor Westchester submitted an apportionment of liability jury interrogatory, requested a specific jury instruction relating to joint and several liability, nor presented any evidence at trial that would support such a jury finding, they waived any arguable claim for a set-off. In a footnote, this Court stated that although Westchester incorporated by reference all of Carson's filings with this Court, some of which may have contained a specific jury instruction in this area, Westchester did not argue that this Court should submit a specific instruction to that effect and therefore waived any arguable claim for a set-off.

**B. Whether Westchester's Judgment Should Be Reduced Due to the Jury's Specific Finding of Prejudice.**

Westchester's second argument for a reduction of the jury's verdict against it is based upon the jury's specific finding that Westchester was prejudiced in the amount of $150,000 by the County's failure to timely notify it of Microvote's default. Westchester contends that the County's damage amount is distinct from the prejudice suffered by Westchester; therefore, any judgment against Westchester must be reduced by Microvote's judgment amount. Because the damages are not divided on the verdict sheet between Westchester and Microvote, Westchester argues that if this Court finds that its credit is already contained in the $1,048,500 dam-

age amount, such a finding would be an improper windfall or credit to Microvote. By law, according to Westchester, Microvote could never receive the benefit of a $150,000 reduction of its damages due to the County's conduct that prejudiced Westchester's ability to draw upon the letter of credit before it expired, specifically, its failure to give Westchester notice of Microvote's alleged default. As such, Westchester argues that the judgment against it should be further reduced by $150,000 because it argues that the jury found that the County's failure to provide Westchester with timely notice of Microvote's breach deprived Westchester of the proceeds of the $150,000 letter of credit which expired on June 1, 1996, and which Westchester held as collateral security for Microvote's performance.

The County responds by stating that: (1) Westchester is not entitled to a $150,000 set-off by any claimed prejudice for the undisclosed $150,000 letter of credit; and (2) Westchester waived its right to seek clarification of the jury verdict. Among the reasons cited by the County to support its contention that Westchester is not entitled to set-off the $150,000 letter of credit against the County is that the County was not required by contract or law to provide notice to Westchester of Microvote's default. The County further contends that there is no document and no law that either required it to provide any notice to Westchester of Microvote's default or to check with Westchester to ensure that Microvote fulfilled its own independent contractual obligations to Westchester, the terms and conditions of which the County claims it was unaware. (*Id.* at 18.) Thus, the County argues that this Court erred when it gave the following jury instruction:

> I instruct you to find that the letter of credit in the amount of $150,000 which Microvote obtained for WestChester's [sic] benefit as collateral security expired on June 1, 1996. Had the County given Westchester timely notice of Microvote's default, WestChester [sic] would have been able to make a timely draw against the letter of credit. As a result, WestChester [sic] would have been prejudiced in the amount of $150,000 and WestChester's [sic] obligation under the performance bond have been discharged by at least that amount, that is if you find that a reasonable time had passed, that notice—they would have a reasonable time within which to give such notice.

(N.T., 10/31/00, p. 118.) The County incorporates its own Post-trial Motion for Judgment as a Matter of Law and contends that this jury instruction constitutes error, warrants an amended judgment and, alternatively, a new trial on damages. (County's Opp'n at 18 n. 13.)

Westchester has repeatedly contested this point with the County and contends that the lack of notice by the County discharged Westchester from its duties pursuant to the performance bond by at least the amount of the letter of credit, or $150,000. (Westchester's Reply Mem. at 10)(citing *Nat'l Sur. Corp. v. U.S.*, 118 F.3d 1542 (Fed.Cir.1997) and Restatement (Third) of Suretyship & Guaranty, §§ 37 & 42). The Restatement (Third) of Contracts: Suretyship and Guaranty, section 37, comment c, explains an obligee's acts which impair a surety's recourse as follows:

> c. Acts that impair recourse. Subsection (3) provides a list of acts that impair the recourse of the secondary obligor against the principal obligor. The acts listed in clauses (a) through (e) are the most common acts of this sort. Clause (f), however, states the general principle—any act or omission that impairs

the principle obligor's duty of performance or duty to reimburse, or the secondary obligor's right of restitution or subrogation, impairs the recourse of the secondary obligor against the principal obligor. It would be impossible to list every possible act that could bring about such impairment, so clause (f) serves as a residual clause, describing these acts by their effect.

Restat. (Third) of Contracts: Suretyship & Guaranty, § 37, cmt. c. Westchester notes that the County does not cite a single, on-point Pennsylvania case that is contrary to the Restatement.

The County counters by first stating that Westchester's Motion improperly seeks a set-off of the Letter of Credit that Westchester obtained from Microvote as a partial security. The County correctly contends that there is no document that required it to provide Westchester with notice of Microvote's default. However, the General Indemnity Agreement between Westchester and Microvote states:

> **B. DEFAULT**
>
> Principal shall be in Default with respect to a contract, and hereunder if any of the following occur:
>
> . . .
>
> B. Any Obligee declares Principal to be in default.
>
> . . .
>
> **9. GENERAL PROVISIONS**
>
> . . .
>
> E. Undersigned agrees to give Surety prompt notice of any facts which might give rise to any claims or suits against Surety upon any Bond.

(Tr. Ex. P–259.) Pursuant to this language, the County argues that Westchester can still recover its entire amount of liability from Microvote and the expiration of the Letter of Credit has no affect or prejudice on Westchester because if Microvote pays Westchester the entire amount of its obligation which it is required to do under the General Indemnity Agreement, there cannot be any prejudice.

The County also argues that Westchester improperly misled this Court into instructing the jury regarding notice and prejudice to Westchester. The County contends that Westchester is not entitled to any reduction in liability by an alleged lack of notice by the County which was not required by any contract or by law because the only party required to provide such notice was Microvote. (County's Opp'n at 19–20.) Thus, the County states that any amendment to the judgment would be contrary to law and would constitute additional prejudicial error to the County. (*Id.* at 20.)

The County also argues that the Restatement provision relied on by Westchester was not intended to apply to the situation presented here where Westchester separately contracted with Microvote to obtain collateral to reduce its own exposure and to protect its own interest. (*Id.* at 22.) According to the County, Westchester's argument appears to be that the County was legally obligated to protect Westchester's right to redeem its undisclosed letter of credit with Microvote. Under the Restatement, according to the County, an obligee's failure to perform a duty owed to a principal obligor or secondary obligor to preserve the value of collateral may be considered an impairment of the value of a security interest in collateral. (*Id.* at 22–23.)

Further, the County contends that when the performance bond does not mention notice, no notice is required. (*Id.* at 23)(citing *U.S. v. Minn. Trust Co.,* 59 F.3d

87, 90–91 (8th Cir.1995); *Cont'l Bank & Trust Co. v. Am. Bonding Co.,* 605 F.2d 1049, 1057 n. 17 (8th Cir.1979); *In re Sherry & O'Leary, Inc.,* 148 B.R. 248, 255 (Bankr.W.D.Pa.1992)). The County stresses that Westchester, on its own initiative, obtained a letter of credit from Microvote to protect its own interest and this collateral did not secure the underlying contract between the County and Microvote. Rather, Westchester separately contracted with Microvote to reduce its own exposure and Westchester therefore retains the right to seek this amount from Microvote. The County correctly argues that neither Westchester nor Microvote presented any evidence that the County was aware of the letter of credit between Microvote and Westchester. (*Id.* at 23.)

The County argues that this Court's jury charge regarding the letter of credit and the special jury interrogatory concerning prejudice was plain error because it rewarded Microvote and Westchester and penalized the County for Microvote's breach of its contract with Westchester. (*Id.* at 23.) The County claims that it did not know of this breach and did not receive any notice of it from either Microvote or Westchester and it had no notice of the contract terms and conditions. (*Id.*) Consequently, the County argues that this Court should not err by further reducing the County's damages against Westchester by an additional amount without any basis in the law to do so. (*Id.*)

Assuming, arguendo, that both Westchester and the County are correct and that this Court erred when it instructed the jury regarding the letter of credit, the County's objection at the charge conference was sufficient to preserve the objection under Rule 51. *Smith v. Borough of Wilkinsburg,* 147 F.3d 272 (3d Cir.1998). In *Smith,* the Third Circuit reaffirmed that " '[i]n this circuit it is clear that by filing and obtaining a ruling on a proposed instruction a litigant has satisfied Rule 51.' " *Id.* at 277 (quoting *Bowley v. Stotler & Co.,* 751 F.2d 641, 646 (3d Cir.1985)). Further, the court stated that "[w]hether that occurs in an objection to the charge, in a request to charge, or otherwise, however, should not be determinative of the waiver issue." *Id.* (citing 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 2d § 2553 at 411 (2d ed.1995)).

Since the arguments at the charging conference were sufficient to properly preserve the parties' objections, this Court must inquire into "whether the charge, 'taken as a whole, properly apprises the jury of the issues and the applicable law.' " *O'Grady v. British Airways,* 134 F.Supp.2d 407, 410 (E.D.Pa. Mar.7, 2001)(citing *Phillips v. Tilley Fire Equip. Co.,* No. 97–0033, 1998 WL 808526, at *7 (E.D.Pa. Nov.23, 1998)), *aff'd,* 203 F.3d 817 (3d Cir.1999)(quoting *Smith,* 147 F.3d at 275 (citation omitted)). After reviewing the charge, as a whole, it appears that the charge properly apprised the jury of the issues and the applicable law involved in this case. Thus, Westchester's Motion for Relief from Judgment is denied.

### III. *MOTION TO SET ASIDE JUDGMENT OR FOR NEW TRIAL.*

Under the Federal Rules of Civil Procedure, the trial court has "considerable discretion in determining whether to grant a new trial." *Goodwin v. Seven–Up Bottling Co. of Phila.,* No. 96–2301, 1998 WL 438488, at *3 (E.D.Pa. July 31, 1998)(citing *Klein v. Hollings,* 992 F.2d 1285, 1289–90 (3d Cir.1993)). When evaluating a motion for a new trial on the basis of trial error, the Court "must first determine whether an error was made in the course of trial, and then must determine whether that error was so prejudicial that

refusal to grant a new trial would be inconsistent with substantial justice." *Farra v. Stanley-Bostitch, Inc.*, 838 F.Supp. 1021, 1026 (E.D.Pa.1993), *aff'd*, 31 F.3d 1171 (3d Cir.1994) (citations and internal quotations omitted). "Absent a showing of 'substantial' injustice or 'prejudicial' error, a new trial is not warranted and it is the court's duty to respect a plausible jury verdict." *Goodwin*, 1998 WL 438488, at *3 (citing *Videon Chevrolet, Inc. v. Gen. Motors Corp.*, No. 91–4202, 1994 WL 188931, at *2 (E.D.Pa. May 16, 1994), *aff'd*, 46 F.3d 1120 (3d Cir.1994)).

Furthermore, as the court has stated in *Banks v. Millar Elevator Co.*,:

> Even if the Court erred in its rulings at trial, a new trial will not be ordered where the errors constitute harmless error. *See Barker v. Deere & Co.*, 60 F.3d 158, 164 (3d Cir.1995). Trial errors are considered harmless when "it is highly probable that the error did not affect the outcome of the case." *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 53 (3d Cir.1989). "Unless a substantial right of the party is affected," a non-constitutional error in a civil case is harmless. *Linkstrom v. Golden T. Farms*, 883 F.2d 269, 269 (3d Cir.1989).

*Banks*, No. 98–997, 2000 WL 274005, at *1 (E.D.Pa. Mar.10, 2000). Whether any error committed by this Court was harmless is

governed by Federal Rule of Civil Procedure 61.[4]

Westchester moves for judgment as a matter of law, or alternatively, for a new trial, on the bases that: (1) the verdict is contrary to law; (2) the verdict is contrary to the evidence; (3) the verdict is contrary to the law and the evidence; (4) the verdict is contrary to the law and the weight of the evidence; (5) this Court erred in denying Westchester's motion for judgment as a matter of law at the close of the County's case; (6) this Court erred in denying Westchester's motion for judgment as a matter of law at the close of all evidence; (7) this Court erred in refusing to charge that the County could recover for those voting machines which it proved were defective; (8) this Court erred in excluding the trial deposition testimony of Robert J. Naegele which tended to show that the FEC (Federal Election Commission) standards were standards for field performance of electronic voting machines and that in the April 23, 1996 primary election, Microvote's machines met or exceeded the FEC standards; and (9) the jury's verdict is inconsistent in that the jury's finding of breach of the implied warranties of merchantability and fitness for a particular purpose are inconsistent with the jury's finding that Microvote did not breach the May 25, 1994 contract with the County. (Westchester's Mem. in Supp. Post-trial Mots. at 1–2.)

As to arguments 1 through 6, Westchester adopts by reference the arguments made by Microvote in its Motion for Judgment as a Matter of Law and also presents an entirely new argument that the County could only recover damages for machines they could prove were actually

4. Rule 61 defines harmless error as follows:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

FED.R.CIV.P. 61.

defective, and it was error for this Court not to so instruct the jury. Microvote's Motion for Judgment as a Matter of Law has been previously denied, and Westchester's aforementioned arguments 1 through 6 will likewise be denied. However, Westchester's additional argument, that the County attempted to recover damages for all of the machines it purchased even though the vast majority of the machines were not defective, is hereafter examined.

Westchester notes that the County contends that 17.7% of the Microvote machines, at most, had performance problems in the April, 1996 primary election. Thus, according to Westchester, as a matter of law, the County was entitled to recover breach of warranty damages "only for the machines out of the original 900 machines that it proved were actually defective." (Westchester's Mem. in Supp. Post-trial Mots. at 12.) Westchester contends that this Court substantially erred in refusing to charge the jury that the County could only recover for those voting machines that it proved were defective.[5]

In response, the County argues that it did not purchase single voting machines, but rather it purchased a voting system which did not function and which was properly rejected. (County's Opp'n Westchester's Post-trial Mot. for J. as Matter of Law and/or New Trial at 6.) The County distinguishes the cases relied upon by Westchester to support its claim that the system is divisible because the product in both the cited cases was a shipment of shoes, not an "integrated networked computer voting system." (*Id.*) In contrast to Westchester's cited cases, the County argues that the entire system was integrated and defective, with random and unpredictable problems that admittedly appeared and disappeared for no particular reason. (*Id.* at 7) (citations omitted).

In any event, the County contends that the jury's finding was not contrary to the weight of the evidence presented which supported the County's argument regarding poor machine performance, including the audit trail tapes and cartridge reports from individual machines used in each election and the computer print-outs of the number of power fail problems for each machine from the November, 1995 election. In addition, Carson's chart of machine problems was also admitted into evidence. Therefore, according to the County, the jury had ample evidence not only of individual machines and their problems, but also of systemic problems, and its verdict was based on consideration of such evidence. Thus, the County con-

5. After the jury charge, counsel for Westchester stated to the Court at sidebar:

**THE COURT:** Yes, do you have exceptions or additions?

**MR. CARLTON:** I would like the Court to charge the jury that they may consider whether or not individual machines did not comply with the terms of the contract, as opposed to the entire system.

**THE COURT:** I don't know how to deal with that, they didn't—they didn't deal with it—

**MR. CARLTON:** Okay.

**THE COURT:** I don't know how to deal with it and that may be a flaw in their case. That would be dealt with later, but—

**MR. CARLTON:** Well, I think you should instruct the jury that it's for them to determine whether or not the voting system was a complete commercial unit or had various components, and that if the various components, i.e. the voting machines, didn't work then, you know, that's—that doesn't mean the whole system gets thrown out, that they're only entitled to recover for the machines that weren't any good.

**THE COURT:** I don't think that was very well developed and I'm not going to—I'll give you an exception.

**MR. CARLTON:** Thank you.

**THE COURT:** Anything else?

**MR. CARLTON:** No, that's it.

(N.T., 10/31/00, p. 119.)

tends that Westchester's argument is meritless.

In reply, Westchester argues that a County witness, Joseph Passarella, calculated that 17 to 18 percent of the Microvote machines malfunctioned during the April, 1996 primary election, and Passarella testified on cross-examination that the Microvote machines did not communicate with each other. Therefore, Westchester argues that the County's contention that what Microvote sold was an "integrated networked computer voting system" was misleading at best. (Westchester's Reply Mem. in Supp. Mot. J. as Matter of Law and/or New Trial at 3–4.)

The proposed jury charge omitted by this Court essentially addressed the specific performance of the contract and therefore was related to the County's breach of contract claim. Indeed, as Westchester's counsel stated, "I would like the Court to charge the jury that they may consider whether or not individual machines did not comply with the terms of the contract, as opposed to the entire system." (N.T., 10/31/00, p. 119.) This charge would, essentially, go to the County's breach of contract action, not to the breach of implied warranty claim, the only claim upon which the jury found the Defendants liable. Thus, any error which may have been committed by this Court was harmless, and did not affect Westchester's substantial rights.

The next argument presented by Westchester in support of its Motion for a New Trial is that this Court erred when it did not allow Robert J. Naegele's deposition testimony regarding the applicability of the FEC standards to be presented to the jury. Robert J. Naegele, as Westchester notes, is the principal author of the Federal Election Commission's design performance and testing requirements for Punchcard Marksense and Direct Recording Electronic Voting Systems. Mr. Naegele was originally retained in this case solely by Carson Manufacturing Corporation, the only settling Defendant, as its expert witness in this area. Prior to trial, this Court denied the County's Motion in Limine to preclude Mr. Naegele from testifying. In that Motion, the County asserted that Mr. Naegele's expert opinion was inadmissible under Federal Rules of Evidence 702 and 703, it was entirely speculative, and it was not based on any valid and reliable methodology. Westchester argues that between the time of this Court's denial of the County's Motion in Limine and Westchester's attempt to present the deposition testimony of Mr. Naegele, nothing had changed that would require this Court to make a different ruling.

However, the Carson–County settlement took place approximately one week prior to the commencement of this trial. Westchester had previously moved to adopt by integration all of Carson's pleadings. Without Carson in the case, Westchester was seemingly left without an expert with respect to the FEC standards.[6] After the trial began, Westchester traveled to California to secure a subpoena for Mr. Naegele's attendance at a trial deposition in this case. The subpoena was met with opposition by the County's local California counsel. Westchester alleges that the County and Carson collusively kept Mr. Naegele from coming to Philadelphia to testify as a live witness. Ultimately, Mr. Naegele's videotaped trial deposition was taken in California by Westchester's counsel, but without counsel for the County present to cross-examine Mr. Naegele. Thus, the County moved to preclude the

6. The Defendants have maintained throughout this entire case that the FEC standards were the proper measure of the required standards of machine performance in the field.

introduction of the videotaped deposition at trial.

Westchester contended that the County chose not to be present at Mr. Naegele's deposition, and the County contended that it was precluded from attending because it was unable to "dial in" to the deposition location or conference room and Westchester's counsel did not return counsel's telephone calls or respond to its faxes. Consequently, outside the presence of the jury and on the record, this Court reviewed the videotaped deposition with counsel in order that the County could make objections and this Court could immediately rule on those objections. As a result of this videotape review, this Court stated that:

> I'm a little concerned about some of the things that were shown to him he didn't seem to know where they were from or what the source of them were. That, I find disturbing.
>
> . . .
>
> unfortunately if someone had been there to cross-examine him he probably would have cleared a lot of it up. I am very uncomfortable with the reliability of this and I was going to admit it but I am, at this point after hearing his testimony I'm ruling that his opinions are, from what I've heard on there, on the tape, are unreliable and I, under the circumstances, am not going to admit it. That's my ruling.

(N.T., 10/30/00, pp. 130, 133.)

Westchester contends that this Court's decision not to admit Mr. Naegele's videotaped testimony in the face of the County's trial objections was erroneous and was inconsistent with this Court's previous ruling that Mr. Naegele could testify. Westchester also opines that the jurors should have heard Mr. Naegele's testimony as to the applicability of the FEC standards to election day performance in order to enable them "to understand the evidence [and] determine a fact in issue." Fed. R.Evid. 702.

Federal courts "have maintained a liberal policy of admitting expert testimony .... because, once the court decides that the expert's testimony would be helpful to the jury, the jury is entitled to evaluate the testimony .... [and t]he court has broad discretion in determining when an expert is qualified to render a helpful opinion." *Dorsett v. Am. Isuzu Motors, Inc.*, 805 F.Supp. 1212, 1224–25 (E.D.Pa.1992), *aff'd*, 977 F.2d 567 (3d Cir. 1992), *cert. dismissed*, 506 U.S. 1089, 113 S.Ct. 1071, 122 L.Ed.2d 498 (1993). In *York v. Adams*, 79 F.R.D. 142 (W.D.Pa. 1978), the court supplied an analysis of Rule 61 stating:

> Under this rule, technical errors or defects which do not affect the rights of a party are deemed to be "harmless errors." In making this determination, the court should consider the entire record before it and all the circumstances of the particular case. Only if the court finds, after a review of the entire record, the alleged error affected substantial rights of the parties will a new trial be ordered; otherwise, it is harmless error and must be disregarded.

*Masino v. Outboard Marine Corp.*, 88 F.R.D. 251 (E.D.Pa.1980), *aff'd*, 652 F.2d 330 (3d Cir.), *cert. denied*, 454 U.S. 1055, 102 S.Ct. 601, 70 L.Ed.2d 591 (1981) (quoting *Id.* at 144 (citations omitted)).

Viewing the transcript objectively, this Court is convinced that its ruling on this issue was correct. The arguments presented by the parties on this issue present nothing new or different from that already argued and objected to at trial, therefore the Court sees no new reason to grant Westchester a new trial on this ground.

Westchester's third argument is that the jury's findings of breach of the implied warranties of merchantability and fitness for a particular purpose are inconsistent with the jury's finding that Microvote did not breach the May 25, 1994 contract with the County. According to Westchester, the implied warranty of merchantability is dependent upon a contract and the jury's determination that Microvote did not breach its contract is inconsistent with the jury's finding that Microvote breached its implied warranties. Westchester cites *Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396 (3d Cir. 2000), *cert. denied,* 531 U.S. 1011, 121 S.Ct. 566, 148 L.Ed.2d 485 (2000), for the theory that breach of warranty claims are wholly subordinate and cannot stand in the absence of a verdict for Montgomery County in the breach of contract claim. The County contends that Westchester's reliance on *Boyanowski* is misplaced, however, because the *Boyanowski* jury found that the Defendant was not liable for tortious interference with contract but was liable for conspiracy to interfere with a contract and that decision was limited to a finding that, absent a finding on the underlying tort, there could be no conspiracy to commit the tort. *Id.* at 405 (citing *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 193 F.3d 781, 789 & n. 7 (3d Cir. 1999)). The County distinguishes *Boyanowski* as only applicable in the context of claims for civil conspiracy and underlying torts rather than claims under the U.C.C. *See Boyanowski,* 215 F.3d 396.

Although Westchester, in its Reply, does not refute the County's argument that *Boyanowski* is not applicable, it contends that the Pennsylvania case law cited by the County is inapposite because courts in those cases held that a purchaser of goods may sue the manufacturer of those goods for breach of an implied warranty of merchantability under 13 Pa.C.S.A. section 2314 in the absence of breach of contract. *See Kassab v. Cent. Soya,* 432 Pa. 217, 246 A.2d 848 (1968), *overruled on other grounds by AM/PM Franchise Assoc. v. Atl. Richfield Co.,* 526 Pa. 110, 584 A.2d 915 (1990)(stating privity is no longer required in assumpsit suits by purchasers against remote manufacturers for breach of implied warranty); *Moscatiello v. Pitt. Contractors Equip. Co.,* 407 Pa.Super. 378, 595 A.2d 1198 (1991)(holding manufacturer of paving machine liable to eventual purchaser for breach of warranty). According to Westchester, these cases which the County cites do not address the issue presented by this Motion; whether a vendor who was not found to have breached a contract for the sale of goods that includes an implied warranty of merchantability, can still be in breach of warranty. (Westchester's Reply Mem. in Supp. Mot. for J. as Matter of Law and/or New Trial at 6 n. 3.) However, Westchester does not provide this Court with any legal guidance with which it may consider Westchester's arguments other than a reiteration that the jury found the contract, under 13 Pa. C.S.A. section 2314, included the implied warranty of merchantability which was not breached by the vendor, and because Microvote did not breach the contract, it did not breach the implied warranty of merchantability included in that contract. Because "[t]he law of Pennsylvania is clear that, for recovery for breach of implied warranties, a party need not prove 'privity of contract,'" *Moscatiello,* 595 A.2d at 1203–1204 (citations omitted), Westchester's argument is rejected.

Finally, Westchester argues that, in the alternative, this Court should grant a new trial based upon what it terms "the inconsistent answers in the verdict form" because the verdict form is properly considered a special verdict under Federal Rule of Civil Procedure 49(a) and when there is

an inconsistency in the special verdict, new trials are granted. (Westchester's Mem. in Supp. Post-trial Mots. at 15)(citing *Malley–Duff & Assocs., Inc. v. Crown Life Ins. Co.,* 734 F.2d 133 (3d Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 564 (1984) and *Halprin v. Mora,* 231 F.2d 197 (3d Cir. 1956)). The County correctly maintains, in its response, that Westchester is not entitled to judgment as a matter of law or a new trial on this basis since there is no inconsistency in the jury verdict form because claims for breach of implied warranties do not require privity of contract. The County cites the Third Circuit's statement in *Boyanowski,* a case cited by Westchester, that "[i]nconsistent jury verdicts are an unfortunate fact of life in law, and should not, in and of themselves be used to overturn otherwise valid verdicts." *Boyanowski,* 215 F.3d at 407 (citations omitted). Consequently, Westchester's Motion for a New Trial based upon inconsistent answers in the jury verdict is denied.

## IV. CONCLUSION.

For the reasons set forth above, Westchester's Post-trial Motions are denied.